STATE EX REL. BLOOMINGTON LAND AND LIVE STOCK CO., RELATOR, v. DISTRICT COURT OF THE TENTH JUDICIAL DISTRICT ET AL., RESPONDENTS.

(No. 2,366.)

(Submitted November 12, 1906. Decided December 8, 1906.)

*Railroads—Eminent Domain—Extent of Power—Streams— Changing Channel—Supervisory Control.*

Railroads—Eminent Domain—Selection of Route—Who may not Complain.
    1. When a railway company has selected a route for its railroad, under the statutes granting it the power, which it deems most advantageous, one claiming to have been injured by such selection may not be heard to say that another route could have been chosen.
Same—Eminent Domain—Streams—Changing of Channel.
    2. A railway company has the right to select a route for its road which it deems most advantageous, and where a river interferes with such route, it has the power to secure land necessary for its use in constructing and maintaining the road on such route in such manner as to afford security for life and property.
Same—Eminent Domain—Extent of Power—Limitations.
    3. A railway company may acquire any land necessary for the construction and maintenance of its road and its adjuncts and appendages, under subdivision 3 of section 894, Civil Code, by purchase or by vol-

untary grant or donation, or by condemnation proceedings, under section 526 of the same Code, subject only ·o the limitations that the right of way shall not exceed two hundred feet in width, except where a greater width is required for excavations and embankments, and that the land for excavations, embankments, sidetracks, turnouts, shops, etc., shall not exceed the amount necessary for such uses and purposes.

Same—Eminent Domain—Streams—Changing of Channel—Part of Construction of Road.

4. *Held,* that the changing of the channel of a stream, which would otherwise have to be crossed by a railway to conform to the route selected by it, when necessary to make the road secure for life and property, is a part of the construction of the road, within the meaning of the statute.

Same—Eminent Domain—Streams—Changing of Channel—Supervisory Control.

5. The changing of the channel of a stream, when necessary to make a railroad secure for life and property, being a part of the construction of the road, within the meaning of the statute, the land necessary to make such change may be secured by the company, and the writ of supervisory control will not issue to annul an order of the district court appointing appraisers to determine the compensation to the owners of the land sought to be condemned.

ORIGINAL proceedings by the state on the relation of the Bloomington Land and Live Stock Company for a writ of supervisory control to the district court of the tenth judicial district for the county of Meagher, and Honorable E. K. Cheadle. judge thereof, to annul an order in condemnation proceedings by the Chicago, Milwaukee and St. Paul Railway Company of Montana. Proceedings dismissed.

*Mr. Fred H. Hathhorn,* and *Mr. Harry A. Groves,* for Relator.

In construing statutes which are claimed to authorize the exercise of the power of eminent domain, a strict rather than a liberal construction is the rule. Such statutes assume to call into active operation a power which, however essential to the existence of government, is in derogation of the ordinary rights of private ownership and of the control which an owner usually has of his property. The rule of ˢstrict construction of condemnation statutes is especially applicable to delegation of the power of the legislature to private corporations. (Lewis on Eminent Domain, 2d ed., sec. 254.)

Since this is so, the prescribed mode for condemning private property should, within all reasonable limits, be inflexibly adhered to and applied. (*Payne* v. *Kansas etc. Ry. Co.*, 46 Fed. 546; *Western Union Tel. Co.* v. *Pennsylvania R. R. Co.*, 195 U. S. 540, 25 Sup. Ct. 133, 49 L. Ed. 312.) In the absence of an express authority granted by statute there has been considerable question whether or not a railroad has power to cross or follow a public highway, navigable stream, or other railroad. (Elliott on Railroads, secs. 966, 973, 1099, 1102, 1105; *Illinois Cent. Ry. Co.* v. *City of Chicago*, 176 U. S. 664, 20 Sup. Ct. 509, 44 L. Ed. 629; Lewis on Eminent Domain, 2d ed., 270, 270a.) This is upon the theory that property devoted to a public use cannot be taken for another in the absence of express statutory authority.

A railway in this state, in laying out its line of road, may appropriate for the purpose of constructing and maintaining the same such land as is absolutely necessary, but in no case to exceed two hundred feet, except for the purpose of excavation or embankment. In thus laying out their road it may cross or follow any stream of water, and in crossing the same divert it from its present bed or location, all of which must be upon the condition that the usefulness of the stream be not impaired. The stream may be diverted for the purpose of enabling the railway to construct its line of road. For the purpose of constructing its line of road the railway cannot appropriate a strip exceeding in width two hundred feet. Hence it cannot exceed this width for the purpose of diverting the channel of the stream and securing its right of way.

*Mr. M. S. Gunn*, for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The Chicago, Milwaukee and St. Paul Railway Company of Montana, having surveyed a route for a line of railroad and

a telegraph line from a point on the eastern boundary line of Montana, in Custer county, through the state to a point on the western boundary line, in Ravalli county, which route passes through the ranch of the Bloomington Land and Live Stock Company, in Meagher county, and, having failed to agree with the land company upon the damages to be paid for the land sought by the railway company, commenced proceedings in condemnation in the district court.

The railway company seeks to secure a strip of land one hundred feet in width for a right of way, certain strips twenty-five feet in width in addition thereto for cuts and fills, and also a strip of two hundred feet in width for the purpose of changing the channel of the Musselshell river. A complaint was filed by the railway company setting forth the facts relative to its use for the lands sought to be acquired. The defendant land company appeared and filed a demurrer, which was overruled, and, after a hearing had before the judge of the court, an order was made appointing appraisers to determine the compensation to be paid by the railway company on account of the taking of the several pieces or parcels of land sought. Thereafter the commissioners made a report as required by law, and the railway company paid into court for the land company the amounts so fixed by the commissioners as compensation. Thereupon the land company applied to this court for a writ of supervisory control to annul the order overruling the demurrer of the land company, and also the order of the judge appointing commissioners. An order to show cause was issued, and, upon the return, the matter was submitted to this court upon the petition filed herein, and a demurrer thereto interposed on behalf of the district court and the judge thereof.

The question submitted for determination is: Did the railway company seek to acquire land which it is not entitled to acquire by the exercise of the right of eminent domain? The subjoined map or diagram shows the situation presented by this application.

▭▭▭  *Right of Way*
▭▭▭  *25ft for Cuts and Fills*
▰▰▰  *200ft for Changing Channel*

That the railway company could acquire, by condemnation, the land sought for a right of way one hundred feet in width is not controverted. We are now asked to determine whether it may also invoke the aid of the power of eminent domain to acquire land in addition to the right of way for cuts and embankments, and for the purpose of changing the channel of the Musselshell river. This question must be determined from the provisions of our Civil Code and Code of Civil Procedure, the portions of which directly applicable are as follows:

Civil Code, section 526: "No corporation shall acquire or hold any more real property than may be reasonably necessary for the transaction of its business, or the construction of its works, except as otherwise specially provided. A corporation may acquire real property as provided in the Code of Civil Procedure, Title VII, Part III."

Section 890: "Any railroad corporation shall be authorized to locate, construct, maintain and operate a railroad with a single or double track, with such side tracks, turnouts, machine shops, offices and depots as may be necessary between any points it may select within the places named in the articles of incorporation as termini of such road," etc.

Section 894: "Every railroad corporation has power: 1. To cause such examination and surveys to be made as may be necessary to the selection of the most advantageous route for the railroad; and for such purposes their officers, agents, and em-

ployees may enter upon the lands or waters of any person, sub-ject to liability for all damages which they do thereto.

"2. To receive, hold, take, and convey, by deed or otherwise, as a natural person, such voluntary grants and donations of real estate and other property which may be made to it to aid and encourage the construction, maintenance, and accommodation of such railroad.

"3. To purchase, or by voluntary grants or donations to re-ceive, enter, take possession of, hold, and use all such real estate and other property as may be absolutely necessary for the con-struction and maintenance of such railroad, and for all sta-tions, depots, and other purposes necessary to successfully work and conduct the business of the road.

"4. To lay out its road, not exceeding in width one hundred feet on each side of its center line, unless a greater width be required for the purpose of excavation or embankment, and to construct and maintain the same, with a single or double track, and with such appendages and adjuncts as may be nec-essary for the convenient use of the same.

"5. To construct their [its] road across, along, or upon any stream of water, water course, roadstead, bay, navigable stream, street, avenue, or highway, or across any railway, canal, ditch or flume, which the route of its road intersects, crosses or runs along, in such manner as to afford security for life and prop-erty; but the corporation shall restore the stream or water course, road, street, avenue, highway, railroad, canal, ditch or flume thus intersected to its former state of usefulness, as near as may be, or so that the railroad shall not unnecessarily im-pair its usefulness or injure its franchise.  6.  *  *  *

"7. To purchase lands, timber, stone, gravel, or other mate-rials, to be used in the construction and maintenance of its road, and all necessary appendages and adjuncts, or acquire them in the manner provided in Title VII, Part III, Code of Civil Procedure, for the condemnation of lands; and to change the line of its road, in whole or in part, whenever a majority of the directors so determine, as is provided hereinafter; but no such

change must vary the general route of such road, as contemplated in its articles of incorporation. 8. * * *

"9. To erect and maintain all necessary and convenient buildings, stations, depots, fixtures, and machinery for the accommodation and use of their passengers, freight and business."

Section 901: "It shall be lawful for such corporation, whenever it may be necessary in the construction of its road to cross any road or stream of water, to divert the same from its present location or bed; but such corporation shall, without unnecessary delay, place such road or stream in such condition as not to impair its former usefulness."

Section 2211, Code of Civil Procedure, as amended by Act of March 7, 1899 (Session Laws, 1899, p. 135): "Subject to the provisions of this Title, the right of eminent domain may be exercised in behalf of the following public uses * * * railroads * * * telegraph lines. * * * "

In order to reach a conclusion we have considered these provisions as all parts of one statute, and that, too, without regard to the division into sections and subsections. Resort to the authorities is of little assistance. We must determine what these statutes mean, and to that end we have arrived at what we believe was the legislative intent, so far as applicable to the question before us, and that intent is fairly stated by treating all the sections above as one statute, and paraphrasing it as follows:

Every railroad corporation has power:

1. To select the route which it deems most advantageous.

2. To receive donations of real estate in aid of the construction and maintenance of the road.

3. To purchase or receive by donation real estate necessary for the construction and maintenance of the road.

4. To secure such real estate as is necessary for sidetracks, for turnouts, for machine-shops, for offices, for depots, for stations, for the convenient buildings, fixtures, and machinery for its business, and for other adjuncts and appendages of like character.

5. To secure land, timber, stone, gravel, and other material to be used in the construction and maintenance of the road.

6. To build its road along, upon, or across any stream and to divert any stream from its present bed whenever in the construction of its road it is necessary to cross such stream.

These are the grants to the company. The limitations upon the powers granted and the exactions imposed upon the company are:

1. Its right of way shall be limited to two hundred feet in width, treating the right of way independently of the grant for cuts and embankments.

2. The amount of real estate which it may hold for any or all of the other objects or purposes named shall be limited to the necessities of the road.

3. The road shall be so constructed as to afford security to life and property.

4. Whenever a stream is interfered with, the company shall restore the same to its former state of usefulness, as near as may be, or so as not unnecessarily to impair its former usefulness.

When this company selected its route along and across the Musselshell river, it did not lie in the mouth of this petitioner to say that another route could have been chosen. (1 Current Law, 1009; 3 Current Law, 1193; *Dallas* v. *Hallock,* 44 Or. 246, 75 Pac. 204; 2 Lewis on Eminent Domain, 2d ed., 891.) The company had the right to select the particular route which it deemed most advantageous, and, having selected such a route with which the Musselshell river interfered, it has power to secure land necessary for its use in constructing and maintaining the road on such route in such manner as to afford security for life and property.

We think counsel for relator are in error in assuming that subdivision 4 of section 894 limits the power of the railway company to condemn land or other property for railroad purposes generally. The power is granted the railway company to secure land sufficient to construct and operate its road,

with all necessary sidetracks, turnouts, machine-shops, offices, depots, and such other adjuncts and appendages as are necessary, and two limitations only are placed upon this grant of power: 1. The right of way shall not exceed a strip of land two hundred feet in width, except where a greater width is required for excavations and embankments; and 2. The land for excavations, embankments, sidetracks, turnouts, shops, etc., shall not exceed in extent the amount necessary for such uses or purposes.

Whether the grant contained in subdivision 7 is the same as that in subdivision 3, or whether the grant in subdivision 3 refers to lands upon which the road and its appendages and adjuncts rest, while subdivision 7 refers to lands the very soil and substance of which are to be used in the construction of the road and its maintenance, need not be considered, for we are of the opinion that any land necessary for the construction and maintenance of the road and its adjuncts and appendages may be acquired under subdivision 3 by purchase or by voluntary grant or donation, or may be acquired by condemnation proceedings under section 526, and the only limitations upon the amount of the land thus to be acquired are those just stated above.

Now, when it is remembered that the railway company was authorized to select the particular route which it selected, and was authorized to construct its road along the Musselshell river and change the channel of that river when the same would otherwise be crossed by the railroad, in our opinion the changing of the channel, when necessary to make the road secure for life and property, is as much a part of the construction of the road itself within the meaning of this statute, as the boring of tunnels, the construction of bridges, the excavation of cuts or the making of fills or embankments where necessary. Any other construction leads to the absurdity that authority to change the channel of the river is conferred, but the power to make the change is withheld, and such a construction of a stat-

ute is never to be indulged unless absolutely necessary from the very language employed in the statute.

Having arrived at the conclusion that the changing of the channel of this river is, in contemplation of the statute, a part of the construction of the road itself, it follows, as a matter of course, from subdivision 7 of section 894, or section 526, when read with subdivision 3, above, that authority to secure land necessary to make such change is conferred, and such land may be secured by condemnation proceedings. While we have not found any authorities directly in point, the following illustrate to some extent the views we entertain: 1 Lewis on Eminent Domain, sec. 256; *In re New York etc. R. R. Co.*, 33 Hun, 148; *Bigelow* v. *Draper*, 6 N. Dak. 152, 69 N. W. 570; *State* v. *St. Paul etc. Ry. Co.*, 35 Minn. 131, 59 Am. Rep. 313, 28 N. W. 3.

As there does not appear to us to have been any error committed by the district court or the judge thereof, the petition filed in this court does not state any facts upon which relief may be granted. The demurrer to the petition is sustained, and the proceedings are dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.