STATE ᴇx Rᴇʟ. LIVINGSTON, Rᴇʟᴀᴛᴏʀ, *v.* DISTRICT COURT ᴇᴛ ᴀʟ., Rᴇsᴘᴏɴᴅᴇɴᴛs.

(No. 6,887.)

(Submitted June 13, 1931.   Decided June 20, 1931.)

[300 Pac. 916.]

*Mr. W. L. Hyde,* for Relator, submitted a brief and argued the cause orally.

*Mr. R. F. Welcome,* County Attorney of Mineral County, *Mr. Walter L. Pope,* and *Mr. J. C. Garlington,* for Respondents, submitted a brief; *Mr. Pope* argued the cause orally.

*Mr. J. W. Bonner, Amicus Curiae,* submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an original application for a writ of supervisory control. Upon filing the petition an order to show cause why the writ should not issue was made and served. The respondents appeared by answer and filed a general demurrer together with a motion to quash. There being no dispute as to the facts, the matter was regularly brought on for argument and submitted for decision. It is sought in this proceeding to annul an order of the district court of Mineral county condemning a certain strip of land sought to be taken by the county for highway purposes in exercise of the right of eminent domain. The defendants admitted that the right of way sought to be condemned was the most feasible and that it is necessary to use it as a highway, but objected to the taking of a parcel designated as lot 7, comprising 1.94 acres, sought to be condemned for the purpose of changing the course of the St. Regis River, alleging that the taking of such tract is not for a public use; that it comprises a part and parcel of a larger tract of land belonging to the defendants, bordering and passing through which for a distance of about one-quarter of a mile flows the St. Regis River

in its original and natural channel; that the taking of the strip of land described would greatly injure the dominant use of the larger tract belonging to the defendants which is now, and for a number of years past has been, used as a camp ground for the entertainment of the public, and as such has returned to its owners substantial revenue; and that the larger tract has a present market value of from $3,500 to $4,500 as a camp ground, but that, if the proposed channel change in the river is made, its value will not exceed $1,000 for any purpose.

From the evidence it appears that the proposed highway as laid out follows the general course of the St. Regis River, which flows generally towards the southeast. At the point where the tract of land involved in this action is located, the river meanders back and forth across the line of the proposed highway, and at the northwest end of the tract of land owned by the defendants the highway will follow along the present channel of the river a distance of approximately 400 feet. At the point where the highway first strikes the river to the northwest it is admittedly not possible to construct a bridge, because a bridge would extend lengthwise of the river and follow its bed. It was therefore necessary and desirable to make a change of the channel of the river so as to force the river to run at right angles, or nearly so, with reference to the highway, so that it may be spanned by a bridge. Instead of making a channel change of that character, which would involve the construction of two bridges, one from the point where the channel must be changed and one over the channel farther to the east, it was proposed by the engineers and sought in this proceeding, to make the channel change farther to the south across the same tract belonging to the defendants and thus entirely eliminate the bend in the river and avoid the construction of two bridges. It was conceded by the defendants that the proposed route for the highway was the best one obtainable, and that it was properly laid out; the defendants' position being thus stated by counsel: "We concede that the route for the road as shown there is the most feasible and proper and should be condemned, but we say that the only

object of taking the particular strip 7 is for the purpose of saving expense and is not necessary. There is no public necessity but merely public convenience and saving of expense; that under its showing it is not proper for the county to condemn it.''

After the highway engineer had testified that some channel change was absolutely necessary in order to establish the proposed highway, counsel for the defendants conceded that a channel change is necessary and that land should be condemned therefor, but object to any change sought merely to save expense in the construction of bridges. The engineer, B. F. Kitt, testified that ''it would be necessary to make a channel change there in the St. Regis River to fit the present road rather than to change the road to fit the river. We would have to make a channel change.'' He was then asked as to whether it would be necessary to condemn some ground in order to do that, and replied, ''It would be through the same parcel.'' Thereupon counsel for the defendants stated: ''In this connection we are now willing and concede the right to condemn, to change that channel across that point which we indicated to the engineer when he was on the stand before. We would be glad to, upon the payment of due compensation. We will concede the right to condemn that. * * * I mean another channel change which would straighten the river so two bridges could be put in as the engineer testified they would have to be.'' It was made to appear that, were an additional bridge to be constructed across the St. Regis River so as to meet the defendants' objection, it would add $20,000 to the cost of the highway at that point besides the cost of upkeep.

In determining that the land should be condemned and commissioners appointed to appraise the defendants' damages, the court stated that, in order for it to hold against the proposed condemnation of the land in question, it would have to take over the management of the public highways, and determine as an engineer a better place for the construction of the highway.

Our Constitution provides that "the right of eminent domain shall never be abridged." (Sec. 9, Art. XV, Const.) It consists of the right of the state to take private property for public use. (Sec. 9933, Rev. Codes 1921.) And private property shall not be "taken or damaged" for a public use without just compensation. (Sec. 14, Art. III, Const.)

Among other purposes, eminent domain may be exercised in behalf of the following public uses: "3. Public buildings and grounds for the use of any county, city, or town, or school district; canals, aqueducts, flumes, ditches, or pipes conducting water, heat, or gas for the use of the inhabitants of any county, city, or town; raising the banks of streams, removing obstructions therefrom, and widening, deepening, or straightening their channels; roads, streets, and alleys, and all other public uses for the benefit of any county, city, or town, or the inhabitants thereof, which may be authorized by the legislative assembly." (Sec. 9934, subd. 3, Rev. Codes 1921.) And "in all cases where land is required for public use, the state, or its agents in charge of such use, may survey and locate the same; but it must be located in the manner which will be most compatible with the greatest public good and the least private injury, and subject to the provisions of section 9943." (Sec. 9938, Id.)

"In their argument counsel on both sides have devoted much attention to the question whether the term 'necessary,' as used in the statute, imports absolute necessity, or only such as may be characterized as reasonable in view of the purpose to which the property sought to be condemned is to be devoted and the benefits to accrue therefrom to the public. Considering this subject, this court, in *Butte, A. & Pac. Ry. Co.* v. *Montana U. Ry. Co.*, 16 Mont. 504, 50 Am. St. Rep. 508, 31 L. R. A. 298, 41 Pac. 232, said: 'We have used the word "necessary" advisedly throughout this opinion, although, when we say that the route chosen by the Butte, Anaconda & Pacific requires the taking of the lands in question as necessary for public use, we do not mean that there is an *"absolute"* necessity of the particular location they seek. But, under the statute,

such an absolute necessity is not a prerequisite to the exercise of the law [right] of eminent domain.' In another part of the opinion the rule is stated thus: 'It would be difficult to lay down any specific rule, as to the measure of the necessity, of sufficient scope to include all cases. It may be observed generally that *"necessary"* in this connection, does not mean an absolute or indispensable necessity, but reasonable, requisite, and proper for the accomplishment of the end in view, under the peculiar circumstances of the case.' " (*Northern Pac. R. Co.* v. *McAdow*, 44 Mont. 547, 121 Pac. 473, 474.)

In an action to condemn private property for a public use, the question of necessity is one of fact, to be determined as other questions of fact, in view of all the evidence in the case. The evidence should show that the land is reasonably required for the purpose of effecting the object of its condemnation. (*Spring Valley Water-works* v. *Drinkhouse*, 92 Cal. 528, 28 Pac. 681; *City of Santa Ana* v. *Gildmacher*, 133 Cal. 395, 65 Pac. 883.) The question of necessity in a given case involves a consideration of facts which relate to the public and also to the private citizen whose property may be injured. The greatest good on the one hand and the least injury on the other are. the questions of fact to be determined in passing upon the question of necessity. (*City of Santa Ana* v. *Gildmacher*, supra.) And, when an attempt is made to show that the location proposed is unnecessarily injurious, the proof should be clear and convincing; otherwise no location could ever be made. (*City of Pasadena* v. *Stimson*, 91 Cal. 238, 27 Pac. 604.) Here we think the court's finding of the necessity based upon substantial testimony is conclusive.

In Montana it is made the duty of the board of county commissioners of the several counties of the state to "contract, agree for, purchase, or otherwise lawfully acquire the right of way over private property for the use of public highways, and for that purpose institute, when necessary, proceeding under Section 9933 to 9958 of the Code of Civil Procedure [Eminent Domain], paying for such right of way from the general road fund of the County." (Chap. 59, Laws 1929.)

In the case of *Breedlove* v. *Board of Commrs. of Wyandotte County*, 127 Kan. 754, 275 Pac. 379, 381, the supreme court of Kansas said: "It is contended and the trial court has found that there was a lack of legislative authority in the board to change a natural water course in the making of the improvement. Plaintiffs argue that the board has only such powers in this respect as are expressly conferred by the legislature and that no such authority has been given. The board is granted full power to lay out and establish roads, to relocate, alter, widen, or vacate an existing road, and to do what is necessary to eliminate dangerous places in the road, and, if more land is necessary, they are empowered to acquire it either by purchase, donation, or condemnation, and to do what is essential to the proper construction of the road. (R. S. 68–114, 68–115.) No limitation is placed on the powers of the board in respect to land over which a waterway or creek may flow. If, the location is such that the waterway would cross the road at a number of places and make necessary the building of several bridges or culverts, it would be economy and good public policy to procure additional land and divert the waterway over it, paying to landowners such damages as they may sustain. No reason is seen why the board under the general grant of powers may not do so." We agree with the reasoning of the Kansas court, and are of opinion that our statute is subject to like application.

When the county selected its route along and across the St. Regis River, it was not within the province of the defendants to say that another route should have been selected. The county had the right to select the particular route which it deemed most advantageous, and, having selected such a route, with which the St. Regis River interfered, it is possessed with power to secure land necessary for use in constructing and maintaining the highway. (*State ex rel. Bloomington Land & Live Stock Co.* v. *District Court*, 34 Mont. 535, 115 Am. St. Rep. 540, 88 Pac. 44, 47.) More especially so where, as here, it is conceded that a change in the river channel is necessary, that the route surveyed is the most feasible one, and that a part of the tract of land in question must be taken in any event.

In the case just cited it was by Mr. Justice Holloway, speaking for this court, said: ''When it is remembered that the railway company was authorized to select the particular route which it selected and was authorized to construct its road along the Musselshell River and change the channel of that river when the same would otherwise be crossed by the railroad, in our opinion the changing of the channel, when necessary to make the road secure for life and property, is as much a part of the construction of the road itself within the meaning of this statute, as the boring of tunnels, the construction of bridges, the excavation of cuts or the making of fills or embankments where necessary. Any other construction leads to the absurdity that authority to change the channel of the river is conferred, but the power to make the change is withheld, and such a construction of a statute is never to be indulged unless absolutely necessary from the very language employed in the statute.

''Having arrived at the conclusion that the changing of the channel of this river is, in contemplation of the statute, a part of the construction of the road itself, it follows, as a matter of course, from subdivision 7 of section 894, or section 526, when read with subdivision 3, above, that authority to secure land necessary to make such change is conferred, and such land may be secured by condemnation proceedings. While we have not found any authorities directly in point, the following illustrate to some extent the views we entertain: 1 Lewis on Eminent Domain, sec. 256; *In re New York etc. R. R. Co.*, 33 Hun (N. Y.), 148; *Bigelow v. Draper*, 6 N. D. 152, 69 N. W. 570; *State v. St. Paul etc. R. Co.*, 35 Minn. 131, 59 Am. Rep 313, 28 N. W. 3.''

From the evidence before the court we think it was justified in making the order in the exercise of its judicial discretion, and therefore this proceeding is dismissed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES FORD, ANGSTMAN and MATTHEWS concur.