THE MONTANA POWER COMPANY, a MONTANA CORPORATION, PLAINTIFF AND RESPONDENT, v. WILLIAM BOKMA, ET AL., DEFENDANTS AND APPELLANTS.

No. 11671.

Decided Aug. 7, 1969.

457 P.2d 769

Graybill, Graybill & Ostrem, Gregory Warner (argued), La-Rue Smith, Great Falls, for appellants.

William H. Coldiron, J. J. Burke, Jr., Butte, Jardine, Stephenson, Blewett & Weaver, John H. Weaver (argued), Great Falls, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This case is a condemnation proceeding instituted by plaintiff Montana Power Company to acquire a right-of-way easement across defendants' lands for the purpose of constructing an electric power transmission line. From the preliminary order of condemnation entered by the district Court, defendants appeal.

Plaintiff Montana Power Company is a public utility engaged in the production, distribution and sale of electric power. Defendants are owners and occupiers of agricultural land located generally northwest of Conrad, Montana. Plaintiff utility seeks to construct a 115 KV electric power transmission line from Great Falls to a point south of Cut Bank, Montana, where the Continental Pipe Line Company, a common carrier of crude oil transported through a pipeline system, operates a pumping station.

The construction of the electric power line essentially involves placing "H-type" double pole structures in the ground to carry the wires. These structures are to be placed at an average interval of about 750 feet, although the spacing intervals vary somewhat with the terrain and at some points three poles with supporting guy wires are contemplated. A distance of 10½ feet separates the two poles in each double pole structure.

Between Conrad and Continental's pumping station, plaintiff seeks to acquire by condemnation an easement on a 60 foot strip running across defendants' lands for construction of this power line.

Early in 1968, plaintiff utility was contacted by personnel of the Continental Pipe Line Company in regard to furnishing electrical power for their pumping station south of Cut Bank. Negotiations culminated in a written agreement generally comprehending substantial amounts of electrical power to be furnished by plaintiff utility. The 115 KV power line was planned (1) to furnish these power requirements of Continental Pipe Line Company, (2) to meet the anticipated increasing power needs of the Conrad, Choteau, and Valier areas, arising from

normal growth, and (3) because of the possibility of an inter-connection with electrical line of the Bureau of Reclamation and Glacier Electric Cooperative. At the present time the power line from Conrad northwest to its terminus at Continental's pumping station south of Cut Bank will serve only Continental, but service from that line is available to other customers should such service be required.

The four cases concerning the landowners heretofore mentioned were consolidated for hearing on the issue of public use and necessity. Hearing was held in the district court of Pondera County before the Hon. Victor H. Fall, district judge presiding. The district court entered findings to the effect that plaintiff has the right to acquire property by eminent domain; that the use for which the property was sought is a public use; that the taking is necessary to such use; that the public interest requires such taking; and that the electric power transmission line has been located in a manner and along a route most compatible with the greatest public good and the least private injury. Based upon those findings, the district court entered its preliminary order of condemnation.

Subsequently plaintiff utility deposited in court the amounts claimed by defendants and secured an order from the district court placing it in possession of the condemned property during the pendency of the action. Defendants now appeal from the district court's preliminary order of condemnation.

Upon appeal defendant landowners assign four issues for review which can be summarized as follows:

(1)  Is the proposed taking for a public use?

(2)  Is the proposed taking necessary for such use?

(3)  Is the proposed taking compatible with the greatest public good and the least private injury?

(4)  Does the proposed taking deprive the landowners of "due process" as required by the Federal and State Constitutions?

The gist of the landowners' contention on the first issue is

that the proposed taking is to provide electric power and service to a single customer; as such it is a taking for a private use and not a public use; and a taking for a private use will not support eminent domain proceedings. Alternatively they argue that the contract for furnishing power by plaintiff utility to Continental Pipe Line Company is illusory and does not require plaintiff utility to furnish power even to that one customer.

Condemnation proceedings by a public utility for the purpose of construction of an electrical power transmission line has been authorized by the legislature and has been so interpreted in past decisions of this Court. The legislature has empowered the plaintiff utility to acquire property by eminent domain. Section 15-2204(d), R.C.M.1947. The legislature has specifically declared that an electric power line is a public use for which private property may be taken by eminent domain proceedings. Section 93-9902(11), R.C.M.1947. This Court has held that dams, reservoirs, power plants, and electric power lines are public uses for which private property may be acquired under eminent domain. Helena Power Transmission Co. v. Spratt, 35 Mont. 108, 88 P. 773, 8 L.R.A.,N.S., 567.

Nonetheless the landowners claim that under the circumstances disclosed here the electric power transmission line is a private line for the benefit of only one customer. They contend that a public use requires an actual use by the public as a whole, or at least the right to use the proposed system by the public in general. They contend that these requirements are absent in the instant case and therefore there is no public use within the meaning of eminent domain proceedings.

At the outset, we recognize that there are two conflicting lines of authority in other jurisdictions concerning the requisites of a "public use" within the meaning of eminent domain proceedings. One view, the limited or narrow view, requires in general the actual use or right to use the proposed system by the public as a whole. The other view, called the board view, essentially requires only a use conferring a "public advantage"

or a "public benefit". Montana, as with many western states, has adhered to the broad view since 1895, presumably to promote general economic development. See Butte, A. & P. Ry. Co. v. Montana U. Ry. Co., 16 Mont. 504, 41 P. 232, 31 L.R.A. 298; Ellinghouse v. Taylor, 19 Mont. 462, 48 P. 757; Helena Power Transmission Co. v. Spratt, 35 Mont. 108, 88 P. 773, 8 L.R.A., N.S., 567; Rutherford v. City of Great Falls, 107 Mont. 512, 86 P.2d 656; State ex rel. Helena Housing Authority v. City Council, Inc. 108 Mont. 347, 90 P.2d 514. Cases cited by the landowners are not controlling authority for the limited or narrow view—Northern Pacific Ry. Co. v. McAdow, 44 Mont. 547, 121 P. 473 (decided on the issue of necessity, not public use); State v. Aitchison, 96 Mont. 335, 30 P.2d 805 (decided on the issue of the right of the Fish and Game Commission to condemn, not public use); Komposh v. Powers, 75 Mont. 493, 244 P. 298 (decided on the basis that the road in question was a public and not a private road).

Thus, in Montana a public use is one which confers some benefit or advantage to the public. Such public use is not confined to actual use by the public, but is measured in terms of the right of the public to use the proposed facilities for which condemnation is sought. As long as the public has the right of use, whether exercised by one or many members of the public, a "public advantage" or "public benefit" accrues sufficient to constitute a public use. This principle is aptly expressed in Nichols on Eminent Domain, 3rd Ed., V. 2, § 7.522 [3]., in the following language:

"As long as every member of the public has an equal right with all others, on equal terms, to the use of the power produced, it matters not that every person is not actually benefited thereby."

Uses which serve a single person or a single enterprise have long been upheld as public uses in Montana if a "public advantage" or "public benefit" is derived. Komposh v. Powers, supra, (a road serving a single farm); Ellinghouse v. Taylor,

supra, (a ditch supplying water to a single enterprise); Kipp v. Davis-Daly Copper Co., 41 Mont. 509; 110 P. 237, 36 L.R.A., N.S., 666 (a railroad spur transporting ore from a single mine).

In the instant case the evidence indicates a "public advantage" or a "public benefit" supporting the finding of a public use. The testimony of George O'Connor, president of plaintiff utility, satisfies all requirements heretofore discussed:

"Q. And is the Company obligated to supply electric energy at reasonable rates and without discrimination to all persons, firms and companies that desire that power? A. Yes, sir, under the law.

"Q. Will you state whether or not all members of the public have an equal right with all others on equal terms to use the power generated, transmitted and distributed by the Company? A. They do, sir.

\*       \*       \*       \*       \*       \*       \*       \*

"Q. All right, Mr. O'Connor, I would ask you this. Would your 115 KV system north of Conrad be available to members of the public or other agencies who might require service off that line? A. It certainly would be."

The Montana Power Company is a public utility and as such it has dedicated its property to the public use under regulations imposed by the Montana Public Service Commission. Great Northern Utilities Co. v. Public Service Comm., 88 Mont. 180, 293 P. 294. Should plaintiff utility refuse to serve others from the proposed line, if can be compelled to do so in a proper case. Any user makes use of the line as a member of the public, because he is exercising a right which belongs to the public as a whole. Judge Russell E. Smith of the U. S. District Court, in a case involving this same issue as the instant case (Landowners Consideration Ass'n v. Montana Power Company, D.C. Mont., 300 F.Supp. 54) summed the matter up in this language:

"In oral argument plaintiffs sought to distinguish Green Street Association v. Daley, supra [7 Cir., 373 F.2d 1], on the ground that it involved a public use, whereas, in this case the

use is alleged by plaintiff to be private. There is such a conclusory allegation in the complaint. The allegation is not amplified. It is flatly contradicted by the findings of the state court. The defendant, The Montana Power Company, is a public utility; it is subject to regulation by the Montana Public Service Commission, both as to rates and practices. It is required to furnish reasonably adequate service at reasonable rates. (Title 70 R.C.M.1947) The service and the charges for the energy to be transmitted over the proposed line will be subject to regulation, as will the line itself. [Citing cases] Under these circumstances the use cannot be a private use."

Defendant landowners alternatively argue that the contract to furnish power to Continental is illusory. This contention is untenable. The contract speaks for itself. It comprehends the furnishing of power at fixed rates when the line is completed and when Continental's motors are installed in 1969 and 1970. There is no evidence whatever that this is not a bona fide contract or that the contract is a smoke screen to enable condemnation and construction of the power line.

For the foregoing reasons we hold that the proposed taking is for a public use within the meaning of eminent domain proceedings.

The second issue assigned for review is whether the proposed taking is necessary for such use. The landowners contend that the proposed 115 KV power line for which condemnation is sought herein is inadequate to serve the power needs that exist north of Conrad thereby necessitating a duplicate line within a short time. This argument is bottomed on the theory that the proposed taking must adequately meet the needs of public use that exist or the taking is not necessary for public use.

Before the district court may order condemnation, it must find that the proposed taking is necessary to the public use under the circumstances of the individual case. Sections 93-9905, 93-9911, R.C.M.1947. The question of necessity is one of fact to be determined as other questions of fact in the light of

all the evidence. State ex rel. Livingston v. District Court, 90 Mont. 191, 300 P. 916. Necessity does not mean absolute or indispensable necessity but reasonable, requisite, and proper for the accomplishment of the end in view, under the particular circumstances of the case. State Highway Comm. v. Yost Farm Co., 142 Mont. 239, 384 P.2d 277; Butte, A. & P. Ry. Co. v. Montana U. Ry. Co., supra.

■ Examining the evidence in the light of the foregoing principles, we find that Mr. O'Connor, president of plaintiff utility, testified that Montana Power has a 69 KV electric transmission system to the Conrad, Choteau and Valier area which is adequate for existing loads but engineering studies indicate that additional loads will require additional transmission capacity in the immediate future. Montana Power has contracted to serve one industrial customer, Continental Pipe Line Company, who is contemplating installation of two 2250 horse power motors, one in 1969 and the other in 1970, in addition to the existing load. The required type of service was not available to the pipe line company from existing sources. The proposed 115 KV line would connect with Montana Power's existing system and add reliability to it. The proposed line was designed at a voltage compatible with other lines with which it could be interconnected. A higher voltage would be excessive both in capacity and cost, while a lower voltage would not be adequate. The proposed line is adequate for the foreseeable future.

Mr. J. A. Fussell, a power utility engineer, called as a witness for defendant landowners, testified the proposed 115 KV line is badly overbuilt if built only to serve the Continental Pipe Line Company load; and it would be inadequate to handle other loading. The trial judge's comment summarizes the thrust of this witness' testimony:

"He says its overbuilt to handle this Continental Pipe Line load, and he says it's underbuilt."

The testimony of these two witnesses illustrates the existence of differences of engineering opinion which were resolved by

the trial judge in favor of plaintiff utility, insofar as they concerned necessity. Plaintiff utility is taking only an easement, not a fee, in a 60 foot strip necessary for pole structures and required safe clearance. It is only taking what is necessary to the proposed use, not something excessive.

For these reasons, we hold that the district court's finding on necessity is supported by substantial, credible evidence and correct in law.

The third issue raised by the landowners is whether the proposed taking is compatible with the greatest public good and the least private injury.

The taking of private property by condemnation proceedings must be compatible with the greatest public good and the least private injury. Section 93-9906, R.C.M.1947. This requirement is specifically made applicable to easements and rights-of-way. Section 93-9904(5), R.C.M.1947. The greatest good on the one hand and the least injury on the other are questions of fact to be determined in passing upon the question of necessity. State ex rel. Livingston v. District Court, supra, quoted with approval in State Highway Comm. v. Yost Farm Co., supra. These questions commonly arise in connection with the location of the proposed improvement. Since the condemnor has the expertise and detailed knowledge of considerations involved in determining location of the improvement, its choice of location is given great weight. See State ex rel. Bloomington Land & Live Stock Co. v. District Court, 34 Mont. 535, 88 P. 44; State ex rel. Livingston v. District Court, supra. Such choice will not be overturned except on clear and convincing proof that the taking has been excessive or arbitrary, it not being the function of the judiciary to determine as an engineer the best location of the proposed improvement. State Highway Comm. v. Crossen-Nissen Co., 145 Mont. 251, 400 P.2d 283. On the other hand when the condemnor fails to consider the question of the least private injury between alternate routes equal in terms of public good, its action is arbitrary and amounts to

400

an abuse of discretion. State Highway Comm. v. Danielsen, 146 Mont. 539, 409 P.2d 443.

The evidence in the instant case shows no abuse of discretion or arbitrary action on the part of the condemnor. The general location of the line was laid out from topographic maps and other data and then the line was flown several times to observe the terrain. The line was run to take advantage of open spaces such as grass lands and river bottoms and was routed as short as possible to reduce costs, improve efficiency of operation of the line, do the least harm to intervening landowners, and reduce the number of pole structures required. Natural barriers and other features not in crop land were utilized as much as possible. Alternatives were considered—use of a zigzag pattern rather than a diagonal across cultivated fields, use of single pole structures, and use of existing rights-of-way. These were rejected for a variety of reasons in determining the location of the line.

In summary, the line has to be located somewhere. No matter where it is put, some landowner's property has to be crossed. If it is not the property of the landowners involved in the instant case, it is other landowners' property. There is ample evidence here that the condemnor located the proposed line in such a manner as to avoid unnecessary injury. This being so the taking is not arbitrary or excessive, no abuse of discretion is involved, and the landowners in the instant case have no just cause for complaint.

The fourth issue assigned for review is whether the landowners have been denied constitutional ''due process'' under the Federal and State Constitutions in connection with the taking of their land in the instant case. This issue is confusing as it was not separately argued or set out in the landowners' brief. However, the gist of their argument seems to be that the trial judge erroneously excluded their evidence showing (1) the proposed line is not adequate to serve the present and foreseeable power needs of the areas to be served, and (2) alternative loca-

tions of the proposed line. As a result, the landowners argue, further condemnations will soon be necessary for yet another power line.

The record indicates the trial judge took the position that with the existence of one user (Continental Pipe Line Company) on the proposed line, a prima facie case of public use and necessity within the meaning of the condemnation statutes was established. This was correct and we so hold. As to limitation of proof contended by the landowners, this is simply not the case. The trial judge was quite liberal in permitting the introduction of evidence along these lines. What he would not permit was speculative testimony on future contingencies that might or might not occur. He insisted on confining the proof to existing needs and considerations involving the segment of the line going north from Conrad acros these landowners' fields. We can find no error in this.

Perhaps the whole matter of "due process" is best summed up by Judge Smith in Landowners Consideration Ass'n v. Montana Power Company, supra:

"In condemnation proceedings as in lawsuits generally the Fourteenth Amendment is not a guaranty that a trial shall be devoid of error. West Ohio Gas Co. v. Public Utilities Commission (No. 1), 294 U.S. 63, 70 [55 S.Ct. 316, 79 L.Ed 761]. To bring about a taking without due process of law by force of such a judgment, the error must be gross and obvious, coming close to the boundary of arbitrary action. The test has been differently phrased by different judges and in different contexts. At times we find the statement that the Constitution is not infringed unless there has been "absolute disregard" of the right of the owner to be paid for what is taken. Chicago, B. & Q. R. Co. v. Chicago, 166 U.S. 226, 245 [17 S.Ct. 581, 41 L.Ed. 979]; Backus v. Fort Street Union Depot Co., 169 U.S. 557, 565 [18 S.Ct. 445, 42 L.Ed. 853]; Appleby v. Buffalo, 221 U.S. 524, 532 [31 S.Ct. 699, 55 L.Ed. 838]. At other times we are told that due process is not lacking

unless 'plain rights' have been ignored, with a reminder that much will be overlooked when there is nothing of unfairness or partiality in the course of the proceedings. McGovern v. New York City, supra, [229 U.S. 363], at p. 373, [33 S.Ct. 876, 57 L.Ed. 1228]. From the very nature of the problem these phrases and others like them are approximate suggestions rather than scientific definitions. In the last resort the line of division is dependent upon difference of degree too subtle to be catalogued. Hudson County Water Co. v. McCarter, 209 U.S. 349, 355 [28 S. Ct. 529, 52 L.Ed. 828]; Klein v. Board of Supervisors, 282 U. S. 19, 23 [51 S. Ct. 15, 75 I.Ed. 140], cf. Davidson v. New Orleans, 96 U.S. 97, 104, [24 L.Ed. 616]. One cannot hope to mark its bearings in a sentence or a paragraph. Enough for present purposes that when the hearing has been full and candid, there must ordinarily be a showing of something more far-reaching than one of dubious mistake in the appraisal of the evidence. Due process is a growth too sturdy to succumb to the infection of the least ingredient of error. 'It takes more than a possible misconstruction by a court to make a case under the Fourteenth Amendment.' Seattle, R. & S. Ry. Co. v. [State of Washington ex rel.] Linhoff, 231 U.S. 568, 570 [34 S. Ct. 185, 58 L.Ed. 372].''

Here there was no showing or allegation of ''gross and obvious'' error ''coming close to the boundary of arbitrary action'' by the trial court. Accordingly we hold that defendants were not denied constitutional due process herein.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN C. HARRISON and BONNER, concur.