No. 02-785

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 220N

YELLOWSTONE PIPE LINE COMPANY,

Plaintiff and Respondent,

v.

WILLIAM J. SEBENA,

Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV 2002-265,
                Honorable Mark L. Guenther, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Kevin E. Vainio, Attorney at Law, Butte, Montana

        For Respondent:

                Jason A. Delmue, Crowley, Haughey, Hanson, Toole & Dietrich,
                Bozeman, Montana

                                Submitted on Briefs:   September 4, 2003

                                        Decided:   August 18, 2004

Filed:

        _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Yellowstone Pipe Line Company (YPL) commenced proceedings in the District Court for the Eighteenth Judicial District, Gallatin County, seeking an order condemning property of William Sebena (Sebena) and other landowners for the relocation of a petroleum pipeline. Following a non-jury trial, the District Court issued findings of fact, conclusions of law, and an order, in which it allowed condemnation for the purpose of re-routing the permanent pipeline, and granted a permanent 50-foot-wide easement and right-of-way over the properties condemned. Sebena appeals. We affirm the judgment of the District Court.

¶3 The following issues are presented on appeal:

¶4 1. Did the District Court err by failing to apply the provisions of 49 C.F.R. § 195.210?

¶5 2. Did the District Court err in finding that Sebena's proposed route for the pipeline was not economically feasible?

¶6 3. Did the District Court err in concluding that YPL's proposed route was the most compatible with the greatest public benefit and least private injury?

2

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7    Since 1953, Yellowstone Pipe Line Company has owned and operated a common-carrier petroleum pipeline that transports fuel from Billings, Montana, to Spokane, Washington. In 1999, YPL discovered several sections of pipeline that were in need of repair, including one section passing through an area of ground water contamination in Gallatin County, just outside of Bozeman, Montana, known as the Idaho Pole Contamination Plume (IPC Plume). Due to unacceptably high levels of pentachlorophenol (PCP) present within the IPC Plume, YPL opted to relocate the pipeline to an area away from the contamination, rather than risk exposing its employees to harmful doses of PCP during the repair process. The pipeline passing through the IPC Plume would then be abandoned.

¶8    As originally constructed in the 1950s, the portion of the pipeline at issue in this litigation passed through the middle of Bozeman's Story Hills subdivision and the entire width of Sebena's property. It then proceeded in a northwesterly direction along Interstate 90, where it passed through the IPC Plume, then north to YPL's terminal on Griffin Drive and eventually out of town.

¶9    After consulting with various engineers and supervisors in the area, and considering several proposed alternatives, YPL decided to avoid the IPC Plume by rerouting the active pipeline to the Montana Rail Link railroad right-of-way. Under this proposal, the pipeline would run west along the southern boundary of the Story Hills subdivision, through the southernmost tip of Sebena's property, then turn southwest beneath Interstate 90 where it would intercept the railroad right-of-way. It would then follow the right-of-way in a

3

northwesterly direction a short distance before reconnecting with the original pipeline. Four private landowners would be affected by the re-route: Tim Barnard (Barnard), Greg Poncelet (Poncelet), Willie Figgins (Figgins), and William Sebena. Except as to Barnard, representatives of YPL were unsuccessful in negotiating the necessary easements and rights-of-way with the affected landowners.

¶10 On May 15, 2002, YPL filed a complaint for condemnation of a right-of-way on properties owned by Figgins, Poncelet, and Sebena. A bench trial followed on July 17 and 18, 2002, during which a substantial amount of evidence was presented concerning the determination of the route proposed and sought by YPL.

¶11 On October 3, 2002, the District Court filed findings of fact, conclusions of law, and an order finding that it was necessary for YPL to replace the defective pipe, that it was reasonable to relocate the pipeline away from the IPC Plume, and that YPL had properly considered and rejected alternative routes. The court further found that YPL's proposed route achieved the greatest public benefit and alleviated private injuries by relocating the active line from under residential and business properties to a railroad right-of-way, by avoiding the IPC Plume, and by relocating the active line from the middle of the Story Hills subdivision to its southern boundary, a place less likely to experience future growth. The District Court accordingly concluded YPL was entitled to a permanent 50-foot-wide easement and right-of-way over the landowners' respective parcels and granted YPL's request for a preliminary condemnation order. Defendant-landowners Figgins and Poncelet

4

thereafter settled their disputes with YPL, and this matter was dismissed with prejudice as to them. Sebena appeals.

## STANDARD OF REVIEW

¶12 "We review a district court's findings of fact to determine whether they are clearly erroneous." *Cenex Pipeline LLC v. Fly Creek Angus, Inc.*, 1998 MT 334, ¶ 22, 292 Mont. 300, ¶ 22, 971 P.2d 781, ¶ 22. "We review a district court's conclusions of law to determine whether the interpretation is correct." *Cenex*, ¶ 22.

## DISCUSSION

¶13 **Did the District Court err by failing to apply the provisions of 49 C.F.R. § 195.210?**

¶14 Sebena contends the District Court erred in failing to apply the provisions of 49 C.F.R. § 195.210, which requires that pipeline locations "be selected to avoid, as far as practicable, areas containing private dwellings, industrial buildings, and places of public assembly." Since YPL's proposed route passes through the middle of Figgins' property, which contains two private residences, equipment sheds, and other structures relating to entrepreneurial interests, and both Figgins' and Sebena's parcels are suitable for future development, Sebena argues that the application of 49 C.F.R. § 195.210 requires an examination of whether it would be "practicable" to relocate the pipeline to an area farther away from such structures. YPL responds, and we agree, that 49 C.F.R. § 195.210 does not command such a narrow interpretation. That regulation provides as follows:

> **Pipeline location.**

(a) Pipeline right-of-way must be selected to avoid, as far as practicable, areas containing private dwellings, industrial buildings, and places of public assembly.

(b) No pipeline may be located within 50 feet (15 meters) of any private dwelling, or any industrial building or place of public assembly in which persons work, congregate, or assemble, unless it is provided with at least 12 inches (305 millimeters) of cover in addition to that prescribed in § 195.248.

Thus, pipeline rights-of-way should avoid, as nearly as *practicable*, inhabitable structures.

Where a pipeline comes within 50 feet of a private dwelling, industrial building, or other place of public assembly, the pipeline must be buried with an additional amount of topsoil.

¶15     In this case, there is no contention that the pipeline at issue comes within 50 feet of any existing structure.  Furthermore, the question of practicability is a factually-driven one.  This Court will not substitute its judgment for that of a district court where the district court is acting as the trier of fact and there is substantial evidence to support its decision. *Ostergren v. Dept. of Revenue*, 2004 MT 30, ¶ 25, 319 Mont. 405, ¶ 25, 85 P.3d 738, ¶ 25. Here, the record provides ample support for the finding that YPL's proposed route gives wide berth to all existing dwellings and inhabitable structures, and avoids, as far as practicable, private dwellings and inhabitable structures which may be built in the future. In addition to relocating the pipeline from under existing residences, businesses, and the contamination plume to the Montana Rail Link right-of-way, and Figgins' and Sebena's properties, the proposed route minimizes interference with future residences in the Story Hills subdivision by moving the pipeline to the subdivision's southern boundary. While the reroute passes through Sebena's and Figgins' properties, also areas of potential future residential and commercial growth, evidence presented at trial revealed that the reroute was

6

not likely to prevent development of Figgins' land, and that Sebena's proposal to develop his land had been on the table for nearly fifteen years and had not yet received approval from Gallatin County officials. Furthermore, the proposed reroute all but completely removes the pipeline from Sebena's property. Given this factual support in the record, which Sebena has not demonstrated to be clearly erroneous, we cannot conclude that the provisions of 49 C.F.R. § 195.210 were violated.

¶16 **Did the District Court err in finding that Sebena's proposed route for the pipeline was not economically feasible?**

¶17 At trial, Sebena suggested that YPL should continue its line along the railroad right-of-way proceeding southeast under Interstate 90 and continuing onto Kelly Canyon where it would eventually intercept the existing pipeline. Sebena provided no engineering opinions or surveyed maps regarding his proposal, but indicated that the increased distance was approximately four miles. At an estimated $60 per linear foot for pipeline installation, the additional distance of four miles would cost approximately $1,267,000.00, which the District Court found was economically unfeasible.

¶18 On appeal, Sebena challenges the District Court's finding that his proposal for a reroute was economically unfeasible because it was four miles longer than necessary, and argues that the court erred in calculating the distance of his proposed route. Relying upon a survey map presented by YPL at trial, and a hand-drawn version of his own proposal, Sebena suggests that his route is only 1,725 feet longer than YPL's proposal, or approximately $103,500.00 more costly to construct. Based upon our review of the exhibits,

however, it is impossible to determine with any accuracy the distance of Sebena's proposed route. Sebena's map, hand-drawn and not according to scale, provides only a rough estimation of his proposal, and YPL's map does not depict Sebena's suggested route.

¶19 Furthermore, the rule is well-established that the district court is in the best position to weigh the evidence, assess the credibility of witnesses, and determine the facts. *Albert v. Hastetter*, 2002 MT 123, ¶ 51, 310 Mont. 82, ¶ 51, 48 P.3d 749, ¶ 51. Accordingly, where substantial credible evidence supports the district court's findings, we will not set them aside. *Albert*, ¶ 51. Here, Sebena himself indicated at trial that the additional distance incurred under his proposal was four miles, interjecting this information during the cross-examination of J. D. Adkins, the senior right-of-way agent responsible for negotiating the easements and rights-of-way needed for YPL's proposed pipeline reroute. This admission, coupled with Sebena's own map, which although not to scale, depicts the additional distance east along the railroad right-of-way then north along Kelly Canyon Road, supports the District Court's determination that Sebena's proposal was four miles longer than necessary. At an additional cost in excess of one million dollars, we hold the District Court did not err in concluding Sebena's proposal was economically unfeasible.

¶20 **Did the District Court err in concluding that YPL's proposed route was the most compatible with the greatest public benefit and least private injury?**

¶21 Sebena contends that the route proposed by YPL is not compatible with the requirement that rights-of-way be located in a manner which provides for the greatest public

benefit and least private injury. Sebena argues that YPL acted arbitrarily when it selected a pipeline route which failed to avoid potentially high density residential areas.

¶22    It is true that where a right-of-way is sought, one of the requirements is that the uses, crossings, intersections, and connections be located in a manner most compatible with the greatest public good and least private injury. Section 70-30-110, MCA. The determination of what constitutes the "greatest public good" and "least private injury" is a factual matter to be resolved by the district court. *See Montana Power Co. v. Bokma* (1969), 153 Mont. 390, 399, 457 P.2d 769, 774. As we stated in *Bokma*, these questions often arise in connection with the location of the proposed improvement. *Bokma*, 153 Mont. at 399, 457 P.2d at 775. Since the condemnor has the expertise and detailed knowledge of considerations involved in determining the location of the improvement, its choice of location is given great weight and will only be overturned upon a showing of clear and convincing proof that the taking has been excessive or arbitrary. *Schara v. Anaconda Co.* (1980), 187 Mont. 377, 386, 610 P.2d 132, 137. However, where the condemnor fails to consider the question of the least private injury between alternate routes equal in terms of public good, its action is arbitrary and amounts to an abuse of discretion. *Schara*, 187 Mont. at 386, 610 P.2d at 137.

¶23    In the present case, the record shows no abuse of discretion or arbitrary action on the part of YPL. YPL considered several alternate routes and carefully weighed each one before rejecting it. It also seriously considered the possibility of leaving the pipeline in its existing location. YPL eventually rejected this idea, however, after substantial research revealed the

9

magnitude of risk associated with exposing workers to high levels of PCP in the IPC Plume, as well as the potentially disastrous environmental ramifications associated with excavating the site. YPL's proposed route avoids the toxic IPC Plume, as well as relocates the active pipeline from under existing residences and businesses to the railroad right-of-way. It also moves the active pipeline from the middle of the Story Hills subdivision to its southern boundary, an area far less likely to experience interference from third parties. While there may be no perfect solution in situations like this, YPL's proposal took into account the private injuries that its proposed route would cause and attempted to balance this with the public benefits achieved. In this effort, YPL offered the expertise of numerous safety professionals, engineers, and legal counsel who worked tirelessly in determining the best possible alternative. The burden was on Sebena to present clear and convincing proof that YPL's proposal was arbitrary and capricious. *Cenex,* ¶ 39. Based on our review of the record, we conclude that he failed to do so.

¶24     Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART