THE STATE OF MONTANA, ACTING BY AND THROUGH THE STATE HIGHWAY COMMISSION OF THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* YOST FARM COMPANY, A CORPORATION OF BILLINGS, MONTANA, DEFENDANT AND RESPONDENT.

No. 10521
Submitted May 29, 1963. Decided August 1, 1963.
384 P.2d 277

Forrest H. Anderson, Atty. Gen., Harry C. Alley (argued orally), Helena, for appellant.

Longan & Holmstrom, Jones & Olsen, Lamey, Crowley, Kilbourne, Haughey & Hanson, Franklin S. Longan and Robert W. Holmstrom (argued orally), Billings, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an action in eminent domain by the State against three parties owning property. Separate judgments were entered in each action, but by stipulation the actions were tried together and are being appealed together. Therefore, we shall treat the defendants as one and refer to them collectively as respondent.

The action was brought to condemn land for use in constructing a highway designated as the "North Frontage Road of the new Montana Interstate." The complaint was the usual interstate highway condemnation complaint, reciting that the Highway Commission had adopted an amended resolution declaring the North Frontage Road a part of the Interstate project and that an agreement between the Highway Commission and the United States Department of Commerce had been entered into for the expenditure of federal funds, and declaring the taking of the lands necessary for the project. The prayer asked the district court to adjudge that the use was a public use authorized by law, and that *the public interest requires the taking of such land.*" Emphasis supplied.

A notice of hearing was filed, which notice recited that the State would move the Court, "for a Preliminary Order of Condemnation establishing the public need and necessity for the taking of the Defendants' property."

Respondent filed an answer specifically denying that the "taking" was necessary to the public use.

At the time of the trial, the State introduced its "amended resolution condemnation order" and rested its case.

The respondent introduced evidence which reflected that the proposed highway for which the State sought to condemn land was approximately seven miles long; that it would parallel the existing interstate highway; that the locality of the proposed highway was already served by a network of existing roads; that the purpose of the proposed highway was to provide access to the interstate highway; that the proposed highway would provide no more access than the existing county roads; that the proposed highway would not benefit the public; that the proposed highway would cost approximately $50,000 per mile to construct; and that the proposed highway would harm and disrupt the farming practices of the respondent.

The State chose not to offer any rebuttal evidence.

This state of affairs caused the trial court to comment in a memorandum as follows:

"In this cause, the trial court is somewhat confused by the position taken by counsel for the State. It would seem that the position of plaintiff is that the provision of the statute providing that the court shall determine the question of necessity is a nullity, and that regardless of the weight of the evidence, the Resolution adopted by the Highway Commission is sufficient to establish plaintiff's case. If such is a fact, then that should be established by the Supreme Court of this State, so that the hearings on the necessity of condemnation proceedings be no longer required to be heard by the Court. In view of the fact that the only evidence produced at the hearing including the presumption which is the sole basis for plaintiff's

case, is all to the effect that there is no necessity for the building of the road in question, I would have to wholly ignore the evidence to find otherwise than I have done."

The appellant State specifies three errors:

"1. The trial judge is without authority to deny necessity of Interstate Defense Highways.

"2. The plenary power of the Highway Commission in contracting with the Federal Government is exclusive and is not a matter of judicial review.

"3. Evidence presented by respondent is immaterial and irrelevant to the question of necessity and fails to sustain judgment."

We keep in mind here that this arises out of eminent domain proceedings and does not arise out of an action to alter design, plans or location of a highway.

Also, we observe that appellant State's position on appeal is inconsistent with its own proceedings. It sought an adjudication of public necessity, but now urges that the court was without authority to deny necessity. This would be sufficient to dispose of this specification (see State v. Oakland and Friedlund, 129 Mont. 347, 351, 287 P.2d 39, and see also Bower v. Tebbs, 132 Mont. 146, 160, 314 P.2d 731, and Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4,) but we shall answer the problem raised.

The statutory sections governing eminent domain proceedings in the State of Montana are found in Chapter 99, Title 93, Revised Codes of Montana, 1947.

R.C.M.1947, § 93-9905, provides as follows:

"*Facts necessary to be found before condemnation.* Before property can be taken, it must appear:

"1. That the use to which it is to be applied is a use authorized by law.

"2. That the taking is necessary to such use."

R.C.M.1947, § 93-9911, as amended, specifies the power of the court and provides in part as follows:

*"Power of the Court—preliminary condemnation order.* The court or judge has power: * * *

"4. If the court or judge is satisfied from the evidence presented at the hearing provided for in section 93-9909, that the public interests require the taking of such lands, and that the facts necessary to be found before condemnation appear, it or he must forthwith make and enter a preliminary condemnation order that the condemnation of the land or other real property may proceed in accordance with the provisions of this chapter."

In the case of Northern Pacific R. Co. v. McAdow, 44 Mont. 547, 554, 556, 121 P. 473, 474, the court quoting from Butte, A. & P. Ry. Co. v. Montana U. Ry. Co., 16 Mont. 504, 41 P. 232, 31 L.R.A. 298, 50 Am.St.Rep. 508, in interpreting section 7334, Revised Codes, 1907 (now R.C.M.1947, § 93-9905) defined "necessary" as follows:

" 'It would be difficult to lay down any specific rule, as to the measure of the necessity, of sufficient scope to include all cases. It may be observed generally that *"necessary,"* in this connection, does not mean an absolute or indispensable necessity, but reasonable, requisite, and proper for the accomplishment of the end in view, under the peculiar circumstances of the case.' "

The court further held that "The property rights of the citizen cannot be invaded, even for public purposes, except upon a substantial showing that the invasion is necessary."

In the case of State ex rel. Livingston v. District Court, 90 Mont. 191, 196, 300 P. 916, 918, the court quoted with approval from Northern Pacific Railway Company v. McAdow, supra, and in addition thereto set forth the following rule.

"In an action to condemn private property for a public use, the question of necessity is one of fact, to be determined as other questions of fact, in view of all the evidence in the case. The evidence should show that the land is reasonably required for the purpose of effecting the object of its condemnation. Spring

Valley Water-works v. Drinkhouse, 92 Cal. 528, 28 P. 681; City of Santa Ana v. Gildmacher, 133 Cal. 395, 65 P. 883. The question of necessity in a given case involves a consideration of facts which relate to the public and also to the private citizens whose property may be injured. The greatest good on the one hand and the least injury on the other are the questions of fact to be determined in passing upon the question of necessity."

In a later case, State v. Whitcomb, 94 Mont. 415, 22 P.2d 823, the court, while holding that the evidence established the public necessity of the proposed public improvement, reaffirmed State ex rel. Livingston v. District Court, supra, and Northern Pacific Ry. Co. v. McAdow, Supra.

■ The foregoing statutes and cases clearly reflect that under our eminent domain statutory provisions, the trial judge not only has the power to determine the question of necessity, but has been directed to make a finding that the public interest requires the taking of the lands before he has power to issue an order of condemnation. It should be noted that while the 1961 Legislature extensively revised the eminent domain procedure by adopting Chapter 234, Laws of 1961, it saw fit not to amend section 93-9905, and it retained that portion of section 93-9911, subd. 4, which requires the judge to find that the public interest requires the taking of the lands before he can issue a condemnation order. In the case of Vantura v. Montana Liquor Control Board, 113 Mont. 265, 270, 124 P.2d 569, 571, the court, while considering a similar action by the Legislature, set forth the following rule:

"The rule is that in adopting a statute the legislature is presumed to have acted with knowledge of the previous construction of similar statutes (United States v. Albright, D. C., 234 F. 202) and to have adopted such construction (United States v. Ryan, 284 U.S. 167, 52 S.Ct. 65, 76 L.Ed. 224)."

■ It is therefore clear that under the Montana statutes, the trial judge had authority to deny necessity in this case.

The appellant has argued that Title 32, Chapter 20, (sec-

tions 32-2001 to 32-2010, R.C.M.1947), provides for a completely new and different type of highway system within the State of Montana; that in connection with this new system, of which the proposed North Frontage Road is a part, the Legislature has delegated to the Highway Commission the power to determine the public necessity of the proposed facility and therefore the trial judge does not have the authority to determine the public necessity of the proposed North Frontage Road in this action. This argument fails for two reasons:

1.   There is no evidence in this case that the proposed North Frontage Road is a "controlled access highway" or a "controlled access facility" as defined by section 32-2002, R.C.M.1947; and

2.   The appellant has not considered the provisions of section 32-2006, R.C.M.1947.

Section 32-2002, R.C.M.1947, defines certain terms used in the act and the terms relevant to the appellant's arguments are as follows:

*"Definitions.* When used in this act:   \*   \*   \*

"(b) 'Controlled access highway' means all portions of an interstate highway which the state highway commission shall determine and designate for through traffic, over, from or to which owners or occupants of abutting land or other persons have no easement of access or only a limited easement of access, light, air or view, by reason of the fact that the property abuts upon such highway, or for any other reason, and shall further include those portions of spurs to the interstate highway system which the state highway commission shall determine and designate as unsafe for or impeded by unrestricted access of traffic from intersecting streets or alleys or public or private roads or ways of passage.

"(c)   'Controlled access facility' means and includes all streets, alleys, public roads, private roads and ways of passage intersecting any controlled access highway and all real property contiguous to the right of way of any controlled access highway."

The appellant admits in its brief that this action does not concern itself with the interstate highway as such but argues that it does pertain to a portion or spur. This argument ignores the condition precedent to the establishment of a portion of any interstate or spurs to the interstate highway system as a controlled access highway which condition is set forth in section 32-2003, R.C.M.1947, by the following language:

"*Designation as controlled access highway—resolution—findings.*

"* * * nor shall any part or portion of any interstate, or spurs to the interstate highway system be designated as a controlled access highway unless the state highway commission shall, by resolution adopted by the majority vote of the members in attendance at any regular or special meeting thereof, find and determine that it is necessary and/or desirable that the rights of, or easements to access, light, air or view be acquired by the state so as to prevent such part or portion of highway from becoming unsafe for or impeded by unrestricted access of traffic from intersecting streets or alleys or public or private roads or ways of passage. Such resolution shall contain a statement of the reasons for the adoption thereof, and shall set forth the location, distance and termini of the portion of the highway designated as a controlled access highway."

The resolution here does not contain the findings required by the quoted portion of section 32-2003, and therefore the evidence does not sustain the appellant's statement that the proposed North Frontage Road is a "portion * * * of spurs" of the interstate highway.

The error of the appellant's argument that the trial judge does not have the authority to determine the public necessity of the proposed North Frontage Road becomes even more apparent when one considers section 32-2006, R.C.M.1947. This section provides in part as follows:

"*Acquisition of property for facility.* For the purpose of this act, the highway authorities of the state, counties, incorporated

cities and towns, respectively, or in co-operation one with the other, may acquire private or public property and property rights for controlled access facilities and service roads, including rights of access, air, view, and light, by gift, devise, purchase, or condemnation, in the same manner as such authorities are now or hereafter may be authorized by law to acquire property or property rights in connection with highways and streets within their respective jurisdictions."

Under this section the Legislature granted unto the Highway Commission the authority to acquire the property for use in constructing a "controlled access facility" by condemnation in the same manner as it is authorized to acquire property rights in connection with other highways. The Legislature did not qualify this power by stating that when attempting to acquire property for a "controlled access facility" the Commission did not have to prove the public necessity of such "controlled access facility." Here again the Legislature in adopting this statute is presumed to have acted with knowledge of the previous construction of sections 93-9905 and 93-9911, and adopted such construction as set forth in the case of Vantura v. Montana Liquor Control Board, 113 Mont. 265, 124 P.2d 569, supra. Therefore, assuming for sake of argument that the North Frontage Road is a "portion or spur" of the interstate highway or a "controlled access facility" the trial judge does have the power to determine the public necessity of the proposed highway or facility.

As to the second specification of error concerning contract rights between the appellant and the Federal Government, we shall summarily dispose of it by observing that, a contract, if one exists, was not introduced nor were its terms made apparent. Neither was such an issue presented to the district court. As a matter of fact, the opposite position was taken as previously described, in that, the trial court was specifically asked to make a determination of public necessity.

As to specification number 3, as to whether the evidence is

sufficient or material, after having introduced the resolution noted heretofore, the appellant rested. Following completion of the respondent's evidence, the appellant chose not to offer any rebuttal evidence. The resolution is provided in R.C.M. 1947, § 32-1615, as follows:

"Such resolution of the commission shall create and establish a disputable presumption of the public necessity of such proposed public improvement; that the taking of such rights of way, easements, lands or other real property or interests therein, and the amount thereof, is necessary therefor; and that the proposed public improvement is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

R.C.M.1947, § 93-1301-7, in part, provides as follows:

"*All other presumptions may be controverted.* All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence."

In the case of In re Wray's Estate, 93 Mont. 525, 535, 19 P.2d 1051, 1054, this court set forth the following rule in connection with disputable presumptions:

"A disputable presumption, says the statute, may be controverted by other evidence. It is successfully controverted when proof to the contrary satisfactorily overcomes it. By proof which satisfactorily overcomes it, is meant that which sustains the affirmative of the issue—a preponderance of the evidence. In this jurisdiction civil cases are to be decided according to the greater weight of the evidence, and a bare preponderance in favor of the party holding the affirmative of the issue is sufficient to warrant, and should result in, a decision in his favor. [Citing cases.] Therefore, when the evidence preponderates against a disputable presumption, it 'fades away in the face of contrary facts.' Welch v. All Persons, 85 Mont. 114, 278 P. 110, 115." (And see Williams v. Swords, 129 Mont. 165, 173, 284 P.2d 674.)

Thus, in order to determine whether or not the disputable presumption was rebutted by the evidence introduced by the respondent, one must consider this evidence. Defendant's Exhibit 5 discloses that the North Frontage Road parallels the existing interstate highway system with its eastern termini located upon an existing county road referred to as 72nd Street West and as Adobe Road; that proposed North Frontage Road constitutes the hypotenuse of a triangle formed by Kings Avenue and 72nd Street West or Adobe Road; that within the area formed by the triangle there are roads intersecting with the proposed North Frontage Road in a northerly and southerly direction every mile along its proposed route and that there are roads running in an easterly and westerly direction every mile within the triangle. The testimony of Jack Mueller, County Surveyor of Yellowstone County disclosed that the roads within the triangle are either paved or built up gravel of all weather type; that the County plans to pave all of the roads within the triangle and that its plans would not be changed by the construction of the proposed North Frontage Road. Mr. Mueller further testified as to traffic counts on file in his office taken by his office or by the State Highway Department reflecting the amount of traffic at various localities within the triangle.

Ishmael Yost testified that there were sixty-six farms located within the triangle and that the population in the area was remaining at a constant level. Mr. Yost further testified as to the damage that would be done by the construction of the proposed North Frontage Road to the property owned by Yost Farm Company.

L. R. Sampson, a professional engineer, who had been engaged in road construction and maintenance since 1915 testified that the existing roads within the triangle were sufficient to handle the traffic upon the roads; that the people living in the area did not have any need for the proposed North Frontage Road; that the public would not be benefited by the pro-

posed North Frontage Road, and that the proposed North Frontage Road would cost at least $350,000 to construct.

It was the testimony summarized above upon which the trial court based its finding that:

"No necessity is shown for the building of the highway to accommodate any people living in the vicinity of the proposed highway, nor the public in general, nor that the construction of the road is in the public interest."

We have also examined appellant's contention that no qualified expert testified. Such was not the situation and the competency of the witness to testify was in the discretion of the trial court. (See State Highway Comm'n v. Peterson, 134 Mont. 52, 328 P.2d 617.)

Finding no reversible error, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, ADAIR and DOYLE, concur.