THE STATE OF MONTANA, ACTING BY AND THROUGH THE STATE HIGHWAY COMMISSION OF THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* JAMES V. DANIELSEN AND JEAN H. DANIELSEN, HUSBAND AND WIFE, VIGGO DANIELSEN ESTATE, LILLIAN PALMER DANIELSEN, ADMINISTRATRIX ET AL., DEFENDANTS AND RESPONDENTS.

No. 10987.

Submitted October 21, 1965. Decided December 31, 1965.

409 P.2d 443.

540

Harry C. Alley (argued), Helena, for appellant.

Harry L. Burns (argued), Burns & Thomas, Chinook, for respondents.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an action in eminent domain filed in the fifteenth judicial district, Roosevelt County. The plaintiff-appellant is the Montana State Highway Commission. Defendants are owners of property sought to be condemned for purposes of constructing a new highway between the towns of Poplar and Brockton.

The background of the case is as follows:

There is currently a highway between Poplar and Brockton which has been in existence for twenty-five years. The Highway Commission first determined to build the new facility along what we shall refer to as the Middle Route. The record reveals that this route would be 14.3 miles in length, cost an estimated $1,632,477.41 to construct, and have a highway users operating cost of approximately $849,000 per year. It would require some confiscation of private property although more than half of the new highway would be constructed over or very near to the present travelled way. A public hearing was held concerning this proposed location on June 11, 1959, and it appears that little opposition to the project developed.

The State Highway Commission made an investigation of another route—the North Route. This line was at first rejected. But in December 1963, the Commission reversed itself and abandoned plans for the Middle Route in favor of the North Route. It was to secure right of way for this location that the present action was instituted. This course would involve almost a complete rerouting of the Poplar-Brockton high-

way, using very little of the existing right of way. It would cut across fertile benchland owned and farmed by the defendants in this cause. It is because of the magnitude of the anticipated damage to their farms that the defendants resist this action. The North Route would be 14.2 miles long, be constructed at an estimated expense of $1,231,648.42, and cost highway users some $831,000 per year.

The feasibility of building the new highway over the present travelled way was, unlike the other two potential routes, not the subject of a detailed investigation. It appears that there was never any intention of using the present route for the new line. It was ruled out, evidently without serious consideration. Thus, the record does not indicate whether there are particular reasons for eliminating it, such as construction problems, inadequate grade, etc. The fact is that Commission officials admitted that it could probably be made into a suitable route. The engineers did evolve a set of findings regarding the present route by using the "old plan for distance" and then "comparing it mile for mile using costs comparable to the middle line." But this was done hurriedly for purposes of comparison and not to determine the feasibility of placing the new facility over the present way. These findings were that the route would be 14.5 miles long, cost $1,553,484.20 to build, and involve highway user costs of $865,000 a year. It was conceded however, that curves would be straightened and hills leveled if the present route became the site of the new highway and that this would reduce the distance as well as the annual highway user costs. Further, it was admitted that right of way costs would be substantially lower than calculated in the estimate.

An important matter overlooked by the Commission in making their decision in favor of the North Route was a highway, soon to be constructed, coming in from the south. This projected line is to join the Poplar-Brockton highway, thus providing access to those two towns from the south. If the selec-

tion of the North Route is sustained one of two alternatives must be followed. Either the future southern highway must be extended three miles beyond the present line to meet the North Route or the existing highway must continue to be used. Neither alternative was taken into account by the Highway Commission. It should be added that if the present route does not become the site of the new highway, Roosevelt County must bear the burden of maintaining it.

Of greater importance is the fact that no comparison was made among the three routes regarding prospective injury to private parties.

The heart of this appeal involves the following findings by the lower court:

"VIII. That there is presently a highway described as Highway No. 2 leading from Poplar, Montana, to Brockton, Montana, which is in the approximate distance of fourteen (14) miles and which has been used by the public for the past forty years or longer, and which said highway can be reconstructed or improved at such time or times as may be necessary and at a reasonable cost to the State of Montana."

"X. That the evidence before this court shows that said Montana State Highway Project No. F240(11) [the North Route] is not planned nor located in a manner which would be *most compatible with the greatest public good and the least private injury.*" (Emphasis supplied.)

The elements of condemnation, germane to this case as established by the statutes and case law of this state, are as follows: Property may be taken only for a use authorized by law and the taking must be necessary to such use. R.C.M.1947, § 93-9905. The proposed public improvement must be located in a manner which will be most compatible with the greatest public good and least private injury. R.C.M.1947, § 93-9906. The adoption of a resolution by the State Highway Commission declaring that the project is necessary to an authorized use and compatible with the greatest public good and least

private harm creates a disputable presumption of the same. R.C.M.1947, § 32-1615. This presumption is overcome when the defendant property owners show fraud, abuse of discretion, or arbitrary action. This requires clear and convincing proof. State Highway Commission v. Crossen-Nissen Co., 145 Mont. 251, 400 P.2d 283.

That the use involved in this case is one authorized by law is not disputed. Nor is the necessity of constructing a new facility. The issue before the court is that of the necessity of the proposed taking in light of the requirement that it be compatible with the greatest public good and least private injury.

It was concluded by the Highway Commission that the three routes—the North, Middle and present were virtually equal in feasibility. As stated by counsel in appellant's brief: "Examination of the evidence discloses that cost of construction, acquisition of right of way, distance, highway user costs and other factors of the three routes are so similar that had the Commission merely drawn straws, any one of the three routes could legally be sustained." And again, "The official acts of the Commission by its resolutions demonstrate very clearly * * * the almost equal merits of the three proposed locations."

It is the opinion of this court that the Commission itself has supplied the clear and convincing proof of abuse of discretion and arbitrary action. This becomes apparent when the case is tested by the equation of greatest public good and least private injury. If, as indicated by the appellant, the three routes are virtually equal based on the factors referred to above and this is questionable, it would seem that the public good would be served equally well by any one of them. Thus, it would become a question of least private injury. This side of the equation demands as much investigation and evaluation as the element of public good. In this case, the Commission admittedly did not take it into account. Commission witnesses allowed that of the three possible routes, the present right of way would require by far the least confiscation of land. Injury

to businesses which would occur if the existing highway were abandoned would be avoided if it were not abandoned. There are important factors to be considered in measuring private harm. In short, without a comprehensive study of the present route, it appears likely that considerably more private damage would be incurred if the North or Middle Route became the new highway rather than the present location.

There is of course the argument that this private injury would be offset by compensation. The man who prefers his land to its value in dollars and cents suffers injury when forced to take the latter. This is not to say that the loss to the defendants in this cause is not compensable for eminent domain purposes. It is merely recognition of the existence of private injury within the meaning of section 32-1615 to the technically fully compensated landowner.

The conclusion would appear to be that the present route, if it be equal in terms of public good to the other two routes, should be selected because it·involves the least private injury. We recognize, however, that the Commission did not make a full study of the existing right of way. This court cannot compel the Commission to build a highway along a line they have not found suitable after a complete investigation. The court will not substitute its judgment for that of the expert agency. State ex rel. State Highway Comm'n v. District Court, 107 Mont. 126, 81 P.2d 347. Further study may reveal that the North Route is clearly superior to the South Route. But if it comes down to matter of "drawing straws" the present route must prevail.

Appellant relies on State Highway Commission v. Crossen-Nissen Co., supra, and would ask how it differs from the instant case. In Crossen-Nissen the contest was, as it is here, the proposed route versus the existing route. In that case, however, there was not the degree of private injury threatened that is present in this case. Only one landowner was involved in Crossen-Nissen. Complained of was a stretch of about one-half

mile of right of way. In the case at bar a number of property owners are involved occupying virtually the entire 14.2 miles of the proposed route. Damage to farm land will be severe. The evidence indicates that the farm of at least one of the defendants will be almost totally destroyed. As to the "public good" aspect in Crossen-Nissen, the evidence revealed no reason to consider the existing line equal or superior to the proposed route. In short, there was not the clear and convincing proof of lack of necessity or inconsistency with the greatest public good and least private harm necessary to establish abuse of discretion and arbitrary action.

Plaintiff-appellant's specifications of error raise two additional points. First, it is argued that certain evidence as to future highway routes planned by the Commission should not have been admitted. This evidence was elicited during cross-examination of Commission officials. It showed the difference in distance motorists would have to travel on projected facilities to reach the respective potential routes between Poplar and Brockton. We feel that this was proper cross-examination. It tended to show the comprehensiveness or lack of comprehensiveness of the Commission's investigation, thus going to the issue of arbitrary action.

Second, appellant maintains that the court's failure to specifically find that the proposed use is one authorized by law renders all other findings a nullity. This is a spurious argument. There is no question that the use here involved is one authorized by law. Further, it is a matter for the defendants to raise. Surely the State Highway Commission does not contend that the use they propose is not permitted by the law.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, CASTLES and ADAIR concur.