No. 12812

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

THE STATE OF MONTANA, ACTING BY
AND THROUGH THE DEPARTMENT OF HIGHWAYS
OF THE STATE OF MONTANA,

                    Plaintiff and Respondent,

    -vs-

CHARLES C. HIGGINS and MARJORIE K.
HIGGINS, husband and wife,

                    Defendants and Appellants.

Appeal from:  District Court of the Eleventh Judicial District,
              Honorable Robert Keller, Judge presiding.

Counsel of Record:

    For Appellants:

        Leif Erickson, Sr., argued, Helena, Montana

    For Respondent:

        Daniel J. Sullivan and James R. Beck argued,
        Helena, Montana

                            Submitted:  November 21, 1974

                            Decided: JAN 23 1975

Filed: JAN 23 1975

*Thomas J. Kearney*
                                        Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Charles and Marjorie Higgins appeal from a preliminary order of condemnation entered in the district court of Lincoln County. The order determines that the use to which the Department of Highways seeks to apply the Higgins' property is a necessary public use authorized by law, and that the taking is required by the public interest.

The action began with a complaint filed by the Department of Highways on July 26, 1972, seeking to condemn a right-of-way through property owned by the Higgins in the Yaak River Valley of northwestern Montana. Attached to the complaint was a resolution of the State Highway Commission which asserted: That public interest and necessity required the construction of a state highway in Lincoln County; that a highway had been planned and located in a manner most compatible with the greatest public good and least private injury; that a portion of property owned by the Higgins was necessary for construction of that highway; and that the Department had been unable to negotiate an agreement for purchase of the property. The owners, Charles and Marjorie Higgins, filed an answer denying the material allegations of the complaint and claiming that $50,000 would be a reasonable and just compensation for the taking.

A hearing was held on October 11, 1973, to determine the "necessity" of the proposed condemnation. The Department introduced the resolution of the State Highway Commission and then rested, relying on the presumptions arising from the resolution by virtue of the provisions of section 32-3904, R.C.M. 1947.

The property owners called Higgins as their only witness. He related his present and anticipated uses of the property and the adverse impact which the proposed condemnation and construction would have on those uses. Testifying as one experienced in

real estate transactions but unqualified as an engineer, he expressed a belief that the proposed highway could be constructed more economically on the east side of the valley, across the river from his property.

On cross-examination he admitted that constructing the highway on the other side of the river would necessitate the use of additional bridges. He expressed a personal opinion that the additional cost of constructing these bridges might be off-set by the reduction in cutting and filling arising from the east side's less rugged terrain. Even if the alternate route was most costly, he felt the added expense/was warranted by the lessened demand for private land. Most of the land on the east side of the river is owned by the federal government, while much of the land on the west side of the valley is privately owned. On cross-examination, he professed no knowledge of whether or not the federal government would allow construction of this highway on its land.

When the property owners rested the Department reopened its case by calling John Dillon, district ranger for the Yaak Ranger District of the Kootenai National Forest. He testified that he was opposed to construction of a highway on federal forest lands in the Yaak River Valley. He had responded to the Department's inquiries by opposing a route on the east side of the river for three reasons: First, he was opposed to dedication of additional forest land for a highway when one already existed on the west side of the river; second, the construction would have an adverse impact on the Yaak River "water influence zone"; and finally, a highway on the east side of the river would inter-fere with moose and mule deer migration patterns.

Dillon also testified that his opinion had been concurred in by his immediate supervisor, but that he did not know whether

the Department had pursued the inquiry to higher levels within the federal bureaucracy. Under cross-examination he also admitted that the primary users of the present highway were loggers, hunters, and fishermen and that the proposed highway would be used similarly.

Following the hearing the preliminary order of condemnation was issued and this appeal was subsequently perfected. Appellants here argue that a highway routing over public land should be preferred to a location on private land. They contend that "necessity" has not been demonstrated until it is shown that the federal land is unavailable for construction of this highway. It is claimed that the unavailability of forest lands here could not be established without a showing that the requests were pursued to the higher levels of the United States Forest Service.

The Department, on the other hand, argues that the only question presented for our consideration is whether or not the Department acted arbitrarily or abused its discretion in routing the proposed highway on the west side of the river. The Department asserts that appellants failed to make such a showing by clear and convincing proof and therefore they cannot prevail upon appeal.

The requirements which must be satisfied before private property can be condemned in Montana are determined by statute. The use for which the property is to be taken must be authorized by law and the taking must be necessary to that use. Section 93-9905, R.C.M. 1947. Before a right-of-way can be condemned, the location of the highway must be made in a manner most compatible with the greatest public good and least private injury. Section 93-9906, R.C.M. 1947. The resolution of the Highway Commission creates a disputable presumption that these statutory

requirements are satisfied.  Section 32-3904, R.C.M. 1947.

Appellants' arguments involve two basic propositions: (1) Routing over public lands should be preferred to routes requiring taking of private land, and (2) the record here does not make a sufficient showing that the State adequately pursued the alternative of routing across national forest lands.

The foundation for the first proposition lies in the balancing test of section 93-9906, R.C.M. 1947.  All other factors being equal, it seems apparent that a routing over public lands would be compatible with the greatest public good and would surely involve the least private injury.  This proposition received at least tacit recognition in State Highway Comm'n v. Danielsen, 146 Mont. 539, 409 P.2d 443.  There three potential routes were available for a proposed highway, one following an existing right-of-way.  Recognizing that the existing location would require the least confiscation of private land, we held that availability of public land was one factor which must be considered in determining location.  A demonstration that the Highway Commission had failed to consider this factor was there sufficient to rebut the presumption generally accorded the Commission's resolution to condemn.

Nonetheless, private injury is but one of the considerations present in a condemnation.  The present record contains facts relevant to both public good and private injury.  While the route across forest lands would occasion the least private injury, it would also be detrimental to the public good.  The route on the east side of the valley would necessitate the construction of more bridges, an economic consideration adverse to the public good.  Avoidance of increased costs as an element of the public good has been recognized by this Court in State ex rel. Livingston v. District Court, 90 Mont. 191, 300 P. 916.

Similarly, damage to watershed and wildlife are factors bearing on the public good and are worthy of consideration here. Given these economic and ecological factors, we cannot find clear and convincing proof that the Highway Commission abused its discretion or acted arbitrarily. As we noted in State Highway Comm'n v. Crossen-Nissen Co., 145 Mont. 251, 257, 400 P.2d 283:

> " * * * The evidence of hardship and the fact that another feasible route, over which this highway could be built, existed did not supply the clear and convincing proof required by this court before it will substitute its judgment for the judgment of an agency especially qualified for making such decisions. There is a public need for this highway. It has to be built over some route. The Highway Commission is authorized and qualified to select the route, and its decision in so doing appears to be compatible with the greatest public good and the least private injury."

While the factual considerations before us in Crossen-Nissen are not the same as those present in the instant case, the controlling law remains the same.

The resolution of the Highway Commission creates a disputable presumption that the statutory requirements for condemnation have been satisfied. Section 32-3904, R.C.M. 1947. The presumption may be controverted by other evidence. Section 93-1301-7, R.C.M. 1947.

The evidentiary effect of a disputable presumption arising from the Highway Commission's resolution was clearly defined in State Highway Comm'n v. Yost Farm Co., 142 Mont. 239, 248, 384 P.2d 277, where we quoted the following rule with approval:

> "'A disputable presumption, says the statute, may be controverted by other evidence. It is successfully controverted when proof to the contrary satisfactorily overcomes it. By proof which satisfactorily overcomes it, is meant that which sustains the affirmative of the issue--a preponderance of the evidence. In this jurisdiction civil cases are to be

decided according to the greater weight of the evidence, and a bare preponderance in favor of the party holding the affirmative of the issue is sufficient to warrant, and should result in, a decision in his favor. [Citing cases.] Therefore, when the evidence preponderates against a disputable presumption, it "fades away in the face of contrary facts."'"

The district court, the trier of fact here, had before it the statutory presumption buttressed by the testimony of the district ranger in whose jurisdiction the construction was proposed. The sole controverting evidence was the testimony of the defendant landowner. The evidence was weighed by the district court and was found to establish, among other things, " * * * that said highway referred to in the complaint has been located along a route which will be most compatible with the greatest public good and the least private injury."

Our review of the record discloses substantial evidence to support that finding. Moreover, there is substantial evidence supporting the choice of the proposed route, even though a location on the federal lands might ultimately have been permitted by the federal government. The failure of the Highway Department to pursue their inquiries concerning the forest route to the highest levels of the federal government lacks importance under these facts. However, under appropriate facts, the failure of the Highway Department to exhaustively pursue the securing of federal or other public lands might constitute arbitrariness or abuse of discretion similar to that found in Danielsen.

The preliminary order of condemnation is affirmed.

_____
                           Justice

We concur:

_____
  Chief Justice

_____
  Justice

- 7 -

Mr. Justice Wesley Castles dissenting:

I dissent.  I would require the condemnor to prove necessity for the taking of private land when publicly owned land is available.  The condemnor should be required, under these conditions, to go further in pursuing alternate routing on public lands.  I do not disagree with the general statements of law applicable here, but merely say the state did not carry its burden of proof to prove necessity.

_Wesley Castles_
Justice


Mr. Justice John Conway Harrison:

I join with Mr. Justice Wesley Castles in what he has said in his dissent.

_John Conway Harrison_
Justice