No. 84-474

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

THE STATE OF MONTANA, ACTING BY
AND THROUGH THE DEPARTMENT OF
HIGHWAYS OF THE STATE OF MONTANA,

                Plaintiffs and Respondents,

        -vs-

STANDLEY BROTHERS, MIKE STANDLEY
and ROBERT STANDLEY,

                Defendants and Appellants.

---

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Church, Harris, Johnson & Williams; Richard F.
                Gallagher, Great Falls, Montana

        For Respondents:

                James A. Lewis, Dept. of Highways, Helena, Montana

---

                        Submitted on Briefs:    Feb. 1, 1985

                                    Decided:    April 18, 1985

Filed:  APR    1985

        <span>Ethel M. Harrison</span>

_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a proceeding in eminent domain instituted by the Montana Department of Highways to acquire an interest in a leasehold for purposes of reconstructing a rural secondary highway. The District Court, Eighth Judicial District, Cascade County, issued a preliminary order of condemnation in favor of the Highway Department and the Standley Brothers, owners of the leasehold interest, brought this appeal.

In 1975 the Cascade County Commissioners asked the Highway Department to improve portions of a rural road south of Great Falls known as the Cascade-Ulm loop. The Highway Department began work on the project and by April 17, 1978 had surveyed and located a proposed route. Prior to that date, representatives of the Highway Department and the Department of State lands had an informal meeting to discuss the new location. The Department of State Lands at that time was planning the installation of pivot sprinkler irrigation systems on land adjacent to the proposed highway. There is no clear record of this meeting but the parties apparently were satisfied that the proposed highway would not interfere with future irrigation development. In December of 1978 a public hearing was held on the proposed location. The route discussed at the hearing was the same as was discussed earlier by the Highway Department and the Department of State Lands. In 1979 a pivot irrigation system was constructed on section 16, the land at issue in this case. The system has a radius of 1,553 feet and irrigates 170 acres around the pivot. It was designed with an "end gun shutoff" to prevent water from spraying the existing highway. Section 16 is a

school section, owned by the State of Montana and administered by the Department of State Lands. The Department leases the land and the income derived therefrom is placed in trust for the benefit of Montana school children.

In March of 1981 the Standley Brothers acquired the lease on Section 16. In April of 1982, the Highway Department began negotiating with the Standley Brothers to acquire a portion of their leasehold interest. At that time the Standleys became aware that the proposed highway would interfere with the sprinkler system and eliminate some irrigated land. They requested that the proposed location be moved. The Highway Department acted on the request and prepared an alternative route that would move the road approximately 100 feet west of the selected route. After an analysis of the costs involved, the Highway Department decided in favor of the original proposal. This was unacceptable to the Standleys, and resulted in this condemnation action.

The power of the Highway Department to acquire an interest in land which it cannot otherwise acquire at a reasonable price is provided in section 60-4-104, MCA. Pursuant to that statute the Department may direct the Attorney General or any county attorney to institute eminent domain proceedings in accordance with Title 70, chapter 30, MCA. Before the Department may direct such proceedings, however, it must adopt an order declaring that:

(a) public interest and necessity require the construction or completion by the state of the highway or improvement for one of the purposes set forth in section 60-4-103, MCA;

(b) the interest described in the order and sought to be condemned is necessary for the highway or improvement;

(c) the proposed highway or improvement is planned or located in a manner which will be most compatible with the greatest public good and the least private injury.

Once the Department adopts such an order, section 60-4-104(3), MCA, creates a disputable presumption,

(a) of the public necessity of the proposed highway or improvement;

(b) that the taking of the interest sought is necessary therefor;

(c) that the proposed highway or improvement is planned or located in a manner which will be most compatible with the greatest public good and the least private injury.

This Court has traditionally been extremely reluctant to substitute its wisdom for that of an administrative agency exercising discretionary powers pursuant to statute. State Highway Commission v. District Court of First Judicial District (1938), 107 Mont. 126, 81 P.2d 347. This has been particularly true where the Highway Department's decision to condemn certain land has been challenged on the ground of arbitrariness or abuse of discretion. "There rests upon the shoulders of one seeking to show that the taking has been excessive or arbitrary, a heavy burden of proof in the attempt to persuade the court to substitute its judgment for that of the condemnor." State Highway Commission v. Crossen-Nissen Co. (1965), 145 Mont. 251, 255, 400 P.2d 283, 285. However, the disputable presumption in favor of the Highway Department, created by the order directing condemnation, can be overcome and controverted by other evidence. State of Montana v. Higgins (1975), 166 Mont. 90,

4

530 P.2d 776. In State Highway Commission v. Danielsen (1965), 146 Mont. 539, 409 P.2d 443, this Court held that the defendant property owner could overcome the presumption by showing clear and convincing proof of fraud, abuse of discretion, or arbitrary action.

In light of the foregoing, the following issues are raised by this appeal:

(1) Whether the proposed taking of the leasehold interest is necessary for the authorized highway improvement?

(2) Whether the proposed location for the planned improvement was determined in a manner most compatible with the greatest public good and the least private injury?

(3) Whether defendant should have been awarded necessary expenses for litigation?

Sections 60-4-104(2)(b) and 70-30-111(2), MCA, provide that land sought to be condemned by the Highway Department must be necessary for the planned use or improvement. The word "necessary" in this context has been interpreted on many occasions by this Court. In Butte, A. & P. Ry. Co. (1895), 16 Mont. 504, 541, 41 P. 232, 245, the following was quoted from an Alabama opinion:

> "It may be observed generally that 'necessary,' in this connection, does not mean an absolute or indispensable necessity, but reasonable, requisite, and proper for the accomplishment of the end in view, under the particular circumstances of the case."

Later cases used virtually identical language in interpreting the meaning of "necessary" as used in the above named statutes. See, Montana Power Co. v. Bokma (1969), 153 Mont. 390, 457 P.2d 769; State Highway Commission v. Crossen-Nissen Co. (1965), 145 Mont. 251, 400 P.2d 283; and State Highway Commission v. Yost Farm Company (1963), 142 Mont. 239, 384

5

P.2d 277. If the Highway Department were required to demonstrate absolute necessity before it could win a condemnation action it would have very little discretion in choosing locations for the public roads; it is hard to imagine a road that could not have been rerouted or that absolutely had to have been located in a given place. All the evidence in this case indicates that the location of the improved road was the shortest, most direct, and least expensive route which was consistent with the design objectives. The planned location was therefore, reasonable, requisite and proper to accomplish the improvement of the highway. Consequently the District Court properly found that the interest the Highway Department seeks to acquire is necessary for the improvement.

The question of a necessary location for a new highway or improvement is best answered by engineers and designers. Equally important, however, in determining location, is a consideration of the interests that may be disturbed. That consideration falls under the statutory rubric of balancing the greatest public good and the least private injury. Sections 60-4-104(3)(c), 70-30-110, MCA. We now turn to the evidence to determine if the Highway Department followed this statutory directive in the present case.

The record discloses very brief and ambiguous communications on the proposed improvement between the two state agencies involved. The proposed alignment of the road was completed in April of 1978. Prior to that time there was a very informal meeting between representatives of the Highway Department and the Department of State Lands. A preliminary highway alignment and the proposed sprinkler system were discussed. The purpose of the meeting was

6

informational. The representative from State Lands did not have the authority to agree on behalf of that agency to the proposed road alignment as it affected the land in question. There is an April 1978 letter in the record from the Administrator of the Division of Land Administration of the Department of State Lands to the Division Engineer, Great Falls Division, of the Montana Highway Department. That letter indicates that State Lands had been working for two years with the lessee of the school section in question on a proposed irrigation project. The letter further expresses concern that there may be a conflict between the irrigation project and the proposed road improvement. The Division Engineer responded that the location phase of the improvement was complete and submitted to the Helena office. Further, he noted that the informational meeting between the representatives of the two departments had resulted in a mutual agreement on the proposed alignment of the highway and that possible conflicts had been resolved.

It is clear from the record that the Highway Department was notified, prior to its completion of the location survey, that there was a possible conflict between the road improvement and a planned irrigation system on leased State lands. Despite this notice, there is no evidence that the Highway Department appreciated the seriousness of the conflict. No systematic effort was made to discover whether the proposed highway would interfere with planned irrigated acreage. Rather, the location survey apparently was pushed through to completion on the vague assurances of an informal meeting that all problems had been resolved. Further, nothing in the record indicates that the Highway Department considered the possibility of private injury. The Department

is directed by statute to balance public good and private injury in determining the location of roads and highways. In this case, the State land in question was under private lease during the entire period of improvement survey and location. Moreover, in April of 1978, if not earlier, the Highway Department was on notice that State Lands was working with the lessee to develop the irrigation system. Despite this, there is no evidence that the Department considered the possibility of injury to this private interest in its decision on final location of the highway.

In State Highway Commission v. Danielsen (1965), 146 Mont. 539, 409 P.2d 443, this Court affirmed the District Court's refusal to condemn land for a highway improvement, holding that the selection of the location comprised an abuse of discretion and was arbitrary. There were three alternative routes in Danielsen for the location of the improvement. Though one of the routes was not carefully investigated, it appeared that all three routes were virtually identical in terms of public cost. If this were true, the Court reasoned, then the final choice should be made based on least private injury. In Danielsen, however, the Highway Department selected a route that would have involved much greater private injury than alternative routes. This despite the fact that the public cost of the alternate routes was virtually the same. Such a selection was held to be an abuse of discretion and arbitrary. In the present case the Highway Department, prior to completing its improvement location, failed to consider the possibility of alternate routes equal in terms of public good. This is difficult to understand in light of the fact that the Department was aware of a potential conflict with the route selected. In

8

addition, since the Department did not even consider private injury, it obviously did not investigate whether an alternate route would reduce private injury. The lesson of Danielsen was expressed succinctly in Montana Power Company v. Bokma (1969), 153 Mont. 390, 399-400, 457 P.2d 769, 775: ". . . when the condemnor fails to consider the question of the least private injury between alternate routes equal in terms of public good, its action is arbitrary and amounts to an abuse of discretion." Accord, Schara v. Anaconda Co. (1980), 187 Mont. 377, 610 P.2d 132.

The Highway Department argues that it considered an alternate route but calculated that the cost of such route would far outweigh the cost of any private injury created by the original alignment. However, an alternate route was not considered until the lessee objected to the original proposal as destructive of some irrigated acreage. This was four years after the original location was completed, and four years after the Department became aware of a possible conflict with that location. The evidence is that the cost differential between the alternate route and the original route is due mainly to redesign and resurvey costs, as well as costs of delay. The differential in actual costs of construction between the two routes appears negligible. Similarly, there is no evidence that the alternate route would be less safe, or appreciably less convenient to the travelling public. It is no doubt true that, at the present time, to construct the improvement using the alternate route will be more expensive than following the original proposal. However, we cannot agree to the condemnation of productive farmland based on comparative cost estimates when those estimates would have been entirely different had the Highway

Department initially planned the improvement based on the criteria of greatest public good and least private injury. Accordingly we reverse and direct the Highway Department to consider whether there is an alternate route, reasonably equal in terms of public good, that would avoid the destruction of irrigated acreage on the school land leased by defendants. Only actual construction costs of the alternate route are to be considered, not those costs created by the failure to consider an alternate route in the first instance.

The Standley Brothers moved the trial court for an order awarding them necessary expenses of litigation, including reasonable and necessary attorney fees, expert witness fees, exhibit costs and court costs, under Article II, Section 29 of the Montana Constitution, which mandates:

> "Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner. In the event of litigation, just compensation shall be awarded by the court when the private property owner prevails."

Conditions precedent to recovery of necessary expenses of litigation are set forth in the following cases: Bozeman Parking Commission v. First Trust Co. (Mont. 1980), 619 P.2d 168, 37 St.Rep. 1610; Callant, Josephson & Kolberg v. Federal Land Bank (1979), 181 Mont. 400, 593 P.2d 1036; Rauser v. Toston Irrigation Dist. (1977), 172 Mont. 530, 565 P.2d 632; State ex rel Dept. of Highways v. Arthur Olsen (1975), 166 Mont. 139, 531 P.2d 1330.

In Bozeman Parking Commission, supra, it is noted that, "Under the constitutional clause, there are only two conditions necessary to entitle the condemnee to litigation expenses. They are (1) litigation, and (2) the private

property owner prevailing." 619 P.2d at 171.   Clearly, both conditions are met in this case.

The judgment of the District Court is reversed and the case remanded to determine legal fees and costs.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices