No. 03-262

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 295

PARK COUNTY, MONTANA, a Political Subdivision
of the State of Montana, acting by and through the
PARADISE AND SHIELDS VALLEY TV DISTRICTS,

Plaintiffs and Respondents,

v.

HENRY ADAMS, and any unknown purchaser under
a contract for deed, mortgages, lienholders or other
claimants of Tract 26A of Certificate of Survey No. 1219,

Defendants and Appellants.

APPEAL FROM:     District Court of the Sixth Judicial District,
In and for the County of Park, Cause No. DV 00-127
The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Karl Knuchel, Attorney at Law, Livingston, Montana

For Respondents:

Tara Depuy, Park County Attorney, Livingston, Montana

Submitted on Briefs:  December 4, 2003

Decided:   October 26, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Henry Adams ("Adams") appeals from a Final Order of Condemnation issued by the Montana Sixth Judicial District Court, Park County, which condemned a piece of real property described as Certificate of Survey No. 1804 ("Condemned Property"). The property was condemned for the uses and purposes of operating and maintaining TV towers and transmitters, the right of access thereto and therefrom, and the right to trim and cut trees interfering with the transmission of the television service. The court's Order gave a fee simple interest in this property to the Plaintiffs ("TV Districts") and their successors and assigns. We affirm.

**ISSUE**

¶2 Adams presents the following issue for review:

¶3 Did the District Court err in granting condemnation for Park County to provide Paradise and Shields Valley TV Districts with a site for television antennae and transmitters under § 70-30-101, *et seq.*, MCA?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4 The respondent TV Districts are duly created and organized television districts pursuant to § 7-13-2501, *et seq.*, MCA, with their principal place of business in Livingston, Park County. The Paradise Valley TV District was created in 1969 and the Shields Valley TV District was created in 1979. Television districts are authorized by the state legislature and serve in the public interest, convenience, and necessity, pursuant to § 7-13-2502, MCA, and are further authorized by the legislature to have the power to acquire lands, rights-of-

2

way, and easements, necessary or convenient for their purposes, pursuant to § 7-13-2510(5), MCA.

¶5      On January 5, 1979, John Lutz leased the Condemned Property--an approximately ten- acre site--from Glenchora F. Myers.  Lutz then sublet the site to the Paradise Valley TV District on May 5, 1979.  Myers eventually sold a large tract of her property, including the Condemned Property, to Yellowstone Basin Property, which in turn, subdivided the property into several tracts.  The sale of Myers' property was executed subject to the Paradise Valley TV District lease.

¶6      In 1985, Adams, a resident of the State of California, purchased an approximately 28.8 acre piece of this property, known as Tract 26A of Certificate of Survey 1219 ("Tract 26A").  Tract 26A included the Condemned Property.  He constructed a primitive cabin which was situated so that the TV Districts' antennae were within his view shed.  When the TV Districts' lease expired in 1999, Adams and the TV Districts attempted to negotiate a new agreement, but they were unable to agree on terms.  The parties further attempted to negotiate an agreement for the TV Districts to purchase either the Condemned Property or the entirety of Tract 26A.  When these negotiations were likewise unsuccessful, the TV Districts filed suit for condemnation of the Condemned Property.

¶7      Following a bench trial, the District Court ordered the Condemned Property condemned on the basis that the TV Districts had established by a preponderance of the evidence that the taking was for public use, necessary, and in the public's interest, and further concluded that Adams had not established that the taking was excessive or arbitrary.

3

Following a subsequent appraisal, the TV Districts paid Adams $25,000 for the Condemned Property. From this condemnation, Adams appeals.

## STANDARD OF REVIEW

¶8 We review a District Court's findings of fact to determine whether they are clearly erroneous. *City of Bozeman v. Vaniman* (1994), 264 Mont. 76, 80, 869 P.2d 790, 793 (citation omitted). Additionally, this Court reviews the district court's conclusions of law to determine whether its conclusions are correct. *Vaniman*, 264 Mont. at 80, 869 P.2d at 793 (citation omitted).

## DISCUSSION

¶9 Did the District Court err in granting condemnation for Park County to provide Paradise and Shields Valley TV Districts with a site for television antennae and transmitters under § 70-30-101, *et seq.*, MCA?

¶10 Adams argues that the District Court misinterpreted the application of § 70-30-101, *et seq.*, MCA, and erred by condemning the Condemned Property for purposes of continued occupation by the TV Districts for television antennae and transmittal sites. Adams further argues that the TV Districts failed to establish all of the elements of the term "necessary" as set forth in § 70-30-111, MCA, because the TV Districts failed to demonstrate that they had considered alternate sites that may have impacted Adams to a lesser degree and may have been more beneficial to the TV Districts and that, since satellite television is available for a fee in the area which the towers currently serve with broadcast television, the towers

4

cannot be in the public interest. Adams further claims that the Montana statutes do not provide for television towers as a necessity for which property can be condemned.

¶11 The TV Districts counter that the placement of television antennae is a public use authorized by the legislature, and thus eminent domain may be exercised. The TV Districts further respond that they established by a preponderance of the evidence that the taking of the Condemned Property is necessary, and Adams has failed to prove otherwise. The TV Districts state that the taking of the Condemned Property is in the public interest, and that the satellite television service available in the area does not carry local television stations which make local weather conditions, local news, and local emergency broadcasts available to the residents of the Paradise and Shields Valleys. Thus, they contend, satellite cannot be said to serve the public interest as well as the current broadcast situation does.

¶12 The District Court found that, as of July 2000, the TV Districts served 1,117 households in Paradise Valley who are charged $10 per household per year; 532 households in the Shields Valley who are charged $25 per household per year; and numerous residents within the city-county zoning district surrounding Livingston who receive the broadcasts free of charge. The District Court found that Meagher County and the local cable television company receive free service from the TV Districts, and the TV Districts provide transmission for the local stations for ABC, NBC, CBS, FOX, PBS, and National Public Radio. The District Court also found that these local stations could be received only through the TV Districts, as satellite television providers do not provide local television stations to Park County.

5

¶13   The District Court further found that the current location of the TV District towers is necessary as there is a limited window of opportunity to receive transmissions from the microwave tower in Rapelje and to transmit into Paradise Valley to the Chico repeater, and that, it being necessary that the tower locations allow transmission into both the Shields and Paradise Valleys, the towers must be located on an extreme ridge line. Noting that the TV Districts attempted in good faith to negotiate a new lease for the Condemned Property, that the expired lease had been for $100 per year, and that Adams offered to execute a new lease for $10,000 per year on the condition that the TV Districts tear down three of the four towers and relocate them elsewhere on the Condemned Property, the District Court found that the TV Districts do not have the funds to tear down and relocate three towers and that it was not clear that doing so would allow the TV Districts to continue to receive and transmit the signals.

¶14   Finally, the District Court found that Adams offered to sell Tract 26A to the TV Districts for $100,000; Tract 26A was appraised for $50,000; the TV Districts offered Adams $65,000 for Tract 26A; and Adams rejected the offer and countered with a sales price of $150,000. The District Court concluded that the taking of the Condemned Property was necessary because it did not appear to be economically or technically feasible to move or replace the towers, and the TV Districts had established by a preponderance of the evidence that the taking is for public use, that the public's interest requires the taking, and that the use is necessary, pursuant to § 70-30-111, MCA, and consistent with our holding in *Vaniman*, 264 Mont. at 83, 869 P.2d at 794. The District Court further concluded that the acreage and

6

right-of-way the TV Districts sought to condemn is the minimum interest necessary in order for the TV Districts to serve the public interest, convenience, and necessity, and that Adams failed to establish that the taking was excessive or arbitrary.

¶15    The purpose of a television district is to serve the public interest, convenience, and necessity in the construction, maintenance, and operation of television translator stations and any system necessary thereto for television program distribution. Section 7-13-2502, MCA. Television districts organized under Title 7, Chapter 13, MCA, have the power to acquire real and personal property necessary or convenient for its purposes. Section 7-13-2510(5), MCA. Eminent domain is the right of the state to take private property for public use. Section 70-30-101, MCA. The right of eminent domain may be exercised for public buildings and grounds and all public uses authorized by the legislature of the state. Section 70-30-102(2), MCA.

¶16    In Montana, a "public use" is a use which confers some benefit or advantage to the public. Such public use is not confined to actual use by the public, but is measured in terms of the right of the public to use the proposed facilities for which condemnation is sought. *Montana Power Company v. Bokma* (1969), 153 Mont. 390, 395, 457 P.2d 769, 772 (hereinafter "*Bokma*"). Television districts, including the TV Districts at issue in this case, are statutorily mandated by § 7-13-2502, MCA, to serve the public interest in this manner.

¶17    "Necessary," in the context of eminent domain, does not mean absolute or indispensable, but reasonable, requisite and proper for the accomplishment of the intended objective. *State by Dept. of Highways v. Standley Brothers* (1985), 215 Mont. 475, 479, 699

P.2d 60, 62 (citing *Butte, A. & P. Ry. Co. v. Montana U. Ry. Co.* (1895), 16 Mont. 504, 541, 41 P. 232, 245). When alternate sites are available, the first consideration is public cost, and amongst the locations with the least public cost, the final choice should be made based on the least private injury. *Standley Brothers*, 215 Mont. at 481, 699 P.2d at 63.

¶18    The District Court concluded that the TV Districts in this case were duly created and organized under the laws of Montana. As such, they have the right, pursuant to § 70-30-102(2), MCA, to exercise eminent domain when necessary. The District Court concluded that the exercise of eminent domain was necessary in this case. Adams now argues that the TV Districts failed to prove "necessity" as required by § 70-30-111, MCA.

¶19    Section 70-30-111, MCA, reads in pertinent part:

> Before property can be taken, the condemnor shall show by a preponderance of the evidence that the public interest requires the taking based on the following findings:
>
> (1) the use to which the property is to be applied is a use authorized by law;
>
> (2) the taking is necessary to the use;
>
> . . .
>
> (4) an effort to obtain the property interest sought to be taken was made by submission of a written offer and the offer was rejected.

This Court has interpreted this statute as requiring a district court to find that the proposed taking is necessary to the public use under the circumstances of the individual case before ordering condemnation. *Lincoln/Lewis & Clark County Sewer District at Lincoln v. Bossing*

(1985), 215 Mont. 235, 239, 696 P.2d 989, 991 (hereinafter "*Bossing*") (citing *Bokma*, 153 Mont. at 397, 457 P.2d at 774).

¶20   Adams argues that we must construe this statute to mean that alternate sites must have been considered by the TV Districts before it can be determined that the taking of his property was necessary under the law.  However, such obligation is neither contained within the language of § 70-30-111, MCA, nor does it square with our case law.  A trial court has the power to determine necessity and make findings on whether the public interest requires the taking in an eminent domain proceeding.  *Bossing*, 215 Mont. at 239, 696 P.2d at 991 (citation omitted).  The condemnor's choice of location is given great weight and will not be overturned except on clear and convincing proof that the decision was excessive or arbitrary.  The burden of proof in such an action rests upon the shoulders of the one seeking to show that the taking has been excessive or arbitrary.  *Bossing*, 215 Mont. at 239, 696 P.2d at 991 (citation omitted).  When a condemnor fails to consider the question of the least private injury between alternates equal in terms of public good, its action is arbitrary and amounts to an abuse of discretion.  *Bokma*, 153 Mont. at 399-400, 457 P.2d at 775.

¶21   As *Standley Brothers* explains, the first item to be considered in determining necessity is the least public cost.  *Standley Brothers*, 215 Mont. at 481, 699 P.2d at 63.  In the case at hand, the television antennae and related improvements are already located on the Condemned Property.  Adams claims that the TV Districts did not amply investigate alternate locations where they could relocate these improvements so as to lessen the private injury incurred by Adams.  At trial, the TV Districts presented ample evidence that it was unlikely

9

that a similarly suitable location could be found where the TV Districts could transmit and receive the broadcast signals as well as they could from their current location on the Condemned Property. The TV Districts presented several witnesses who testified about the advantages of the current location and the unlikelihood that moving the antennae would allow the TV Districts to serve their customers in the same manner. Regardless, it was undisputed that moving the antennae and concomitant improvements would result in a substantial cost to the public. One witness for the TV Districts estimated the cost of installing a single tower in a new location to be $74,000, not including the cost of acquiring the property, building access roads or obtaining electrical service, if necessary, or the cost of tearing down the old tower.

¶22 In reviewing the District Court's findings, we do not ascertain them to be clearly erroneous. As contemplated by § 70-30-111, MCA, and our holding in *Vaniman*, 264 Mont. at 83, 869 P.2d at 794, the TV Districts proved by a preponderance of the evidence that the taking of the Condemned Property is for public use, the public's interest requires the taking, and the use is necessary. Thus, we conclude that the District Court did not err in granting condemnation for Park County to provide Paradise and Shields Valley TV Districts with a site for television antennae and transmitters under § 70-30-101, *et seq.*, MCA.

## CONCLUSION

¶23 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA O. COTTER

10

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER