No. 82-215

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

MADISON COUNTY, a body politic, and
the MADISON COUNTY COMMISSION,

      Plaintiffs and Respondents,

      -vs-

ED ELFORD and ETHLYN VIVIAN ELFORD and
ELFORD RANCHES, a Mont. corp., & LLOYD
C. BREWTON & BILLIE B. BREWTON,

      Defendants and Appellants.

---

Appeal from:  District Court of the Fifth Judicial District,
In and for the County of Madison, The Honorable
Frank Blair, Judge presiding.

Counsel of Record:

    For Appellants:

        Poore, Roth & Robinson; Rick Anderson, Butte,
        Montana

    For Respondents:

        Loren Tucker, County Attorney, Virginia City,
        Montana

---

Submitted on Briefs:  January 13, 1983

Decided:  April 1, 1983

Filed: APR 1 - 1983

_Ethel M. Harrison_

---
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Elford Ranches and Lloyd and Billie Brewton appeal from a judgment in a condemnation action entered in the District Court of the Fifth Judicial District, Madison County. The judgment granted to Madison County a prescriptive easement to an existing road and condemned certain tracts of land, all of which were owned by the Elfords and Brewtons. The existing private road and the condemned land were to be used by Madison County for the construction of a public county road. The Elfords and Brewtons also appeal from the District Court's order which granted the County's motion to amend the findings of fact and conclusions of law; denied the Elfords' and Brewtons' motion to amend the findings of fact and conclusions of law; and denied the Elfords' and Brewtons' motion for a new trial.

In September of 1980, a petition was submitted to the Madison County Commission requesting that a road be constructed to join the Melrose and Burma roads located west of Twin Bridges. The petition did not specify a particular route. In November of 1980, Madison County hired a registered surveyor to survey a potential route (hereafter referred to as "Route A"). Based on this survey, Madison County commenced negotiations with the Elfords and Brewtons to buy the land under proposed Route A.

In May 1981, the same surveyor was again hired by Madison County to survey another route. This route (hereafter referred to as "Route B") became the route which is now condemned by the District Court's judgment and is the subject of this appeal. Route B was never the subject of

2

negotiations between Madison County and the Elfords and Brewtons.

On August 6, 1981, the Madison County Attorney sent a letter to the attorney representing the Elfords and Brewtons. This letter contained an "or else" mandate that unless the Elfords and Brewtons agreed to the conditions proposed by Madison County concerning Route A, Madison County would proceed to condemn Route B.

The Elfords and Brewtons did not agree to Madison County's conditions, and a complaint was filed against them on September 3, 1981. The complaint sought to condemn the property along Route B owned by the Elfords and Brewtons. On October 8, 1981, the District Court held a hearing to determine, among other things, whether Route B was located in a manner which would be most compatible with the greatest public good and the least private injury.

Witnesses for Madison County included the county's chief executive, Robert Storey, and a county commissioner, Marie McAlear. Both witnesses testified that Route B was chosen because it maximized the public good and caused the least harm to the private landowners. On cross-examination, however, both witnesses admitted that Madison County had not determined in specific dollar amounts the cost of damages to be paid to the landowners or the cost of construction for either Route A or Route B. Robert Storey testified that a comparison of prospective private injury was never made between Route A and Route B. Both witnesses also admitted that an appraiser was never hired by the County to compare the routes in terms of greatest public good and least private injury. In addition, the witnesses testified that when Madison County estimated the cost of acquiring the

3

right-of-way, it considered only the amount of land actually taken. The cost of damages to the remaining property was not considered.

At the hearing, the Madison County Attorney questioned several witnesses in an attempt to prove that a prescriptive easement existed across the Elfords' and Brewtons' property. Delbrook Lichtenerg, who lives on Burma Road, testified that he had never been barred from using the road which is located on the Elfords' land, but also admitted he had received the Elfords' permission to use the road. Nick Narancich, another neighbor of the Elfords and Brewtons, testified that he used the road whenever he so desired. He also stated that gates crossed the road at the entrances of both the Elfords' and Brewtons' property, and that the gates were posted with "No Trespassing" signs.

Near the end of the County's presentation of witnesses, the attorney for the Elfords and Brewtons objected to the introduction of testimony regarding a prescriptive easement. The reasons for the objection were that the complaint did not ask for a prescriptive easement and the Elfords and Brewtons were not put on notice that they would be required to defend that claim. The objection was overruled.

On January 5, 1982, the District Court filed its findings of fact, conclusions of law and order, wherein the court condemned Route B and found that a prescriptive easement existed across the Elfords' and Brewtons' property. A judgment was entered and notice of entry of judgment was filed on January 14, 1982. On January 21, 1982, the Elfords and Brewtons filed a motion to stay the judgment; a motion to amend the findings of fact, conclusions of law, and judgment;

4

and an alternative motion for a new trial. The motions were noticed up for hearing on January 27, 1982.

On January 25, 1982, Madison County filed a motion for an additional finding of fact and conclusion of law that the County had "properly determined a route for the road to be condemned which is consistent with a balance of the greatest public good against the least private injury even in the absence of a public prescriptive right-of-way across the [Elford and Brewton] property."

The hearing on the post-trial motions was held on January 27, 1982. On February 17, 1982, the District Court entered its order denying the Elfords' and Brewtons' post-trial motions and adopting the County's proposed additional finding of fact and conclusion of law. Thereafter, the Elfords and Brewtons filed their timely notice of appeal.

Four issues are presented for our review:

1. Did the County comply with the statutory requirements of sections 7-14-2601, et seq. and 70-30-110, MCA?

2. Was the District Court's finding of a public prescriptive right-of-way proper?

3. Was the County's motion for additional findings of fact and conclusions of law timely filed pursuant to Rule 52(b), M.R.Civ.P.?

4. Is the District Court's additional findings of fact, conclusions of law and order dated February 17, 1982, a nullity?

The Elfords' and Brewtons' first allegation of error is that the statutory requirements of section 7-14-2601, et seq., MCA, which relate to the establishment, alteration, and

5

abandonment of county roads, were not followed by Madison County. Madison County, on the other hand, contends that section 7-14-2601, et seq., MCA, does not apply to this proceeding and that this Court should analyze the lower court's proceeding only in light of the eminent domain requirements beginning at section 70-30-101, MCA. Madison County's contention is in error.

When the right of eminent domain is invoked, the provisions of the law granting the right must be complied with. Housing Authority v. Bjork (1940), 109 Mont. 552, 556, 98 P.2d 324, 326. In this case, Madison County did not comply with section 70-30-108, MCA, which states, "Nothing in this code must be construed to abrogate or repeal any statute providing for the taking of property in any city, town, or county for road or street purposes." Therefore, Madison County must comply with the statutory provisions relating to the establishment of county roads.

The County's statutory authority to acquire right-of-way for county road purposes is found in section 7-14-2107, MCA, which states,

> "(1)    Each Board of County Commissioners shall contract, agree for, purchase, or otherwise lawfully acquire right-of-way for county roads over private property.    It may institute proceedings under Title 70, Chapter 30, paying for such right-of-way from the county road fund.
>
> "(2)    Each board shall acquire rights-of-way for county roads and discontinue or abandon them only upon proper petition therefor.
>
> "(3)    By taking or accepting interests in real property for county roads, the public acquires only the right-of-way and the incidents necessary to enjoying and maintaining it."    (Emphasis added.)

Based upon this statute, counties have the statutory authority to institute eminent domain proceedings for acquiring right-of-way. The counties cannot, however,

6

exercise such authority without following the proper petition procedure.

The Elfords and Brewtons argue that the petition requesting the establishment of a county road did not comply with the requirements of section 7-14-2602, MCA, and therefore was not "proper" as required by section 7-14-2107(2), MCA. Section 7-14-2602, MCA, provides:

> "Contents of petition. The petition must set forth:
>
> "(1) the particular road or roads to be opened, established, constructed, changed, abandoned, or discontinued;
>
> "(2) the general route thereof;
>
> "(3) the lands and owners affected;
>
> "(4) whether the owners who can be found consent thereto;
>
> "(5) where consent is not given, the probable cost of the right-of-way;
>
> "(6) the necessity for and advantage of the petitioned action."

The petition which was submitted in September 1980 to the Board of County Commissioners (hereafter referred to as "board") indicated the general route of the road, the land affected, and the reasons why the road was necessary. At the hearing, however, Robert Storey's testimony admitted that the petition did not set forth the landowners affected, whether those landowners consented to the right-of-way, or the probable cost of the right-of-way. Based upon these omissions, it cannot be said that the petition was proper.

After a proper petition is filed, the board is required to "cause an investigation to be made of the feasibility, desirability, and cost of granting the prayer of the petition." Section 7-14-2603(1), MCA. It appears that an investigation was in fact made pursuant to statute, and

7

thereafter the board notified the Elfords and Brewtons and other landowners affected that the board would hold a hearing to consider the "Viewers' Report" of the land specified in the petition.

The board is then required to make an entry of its decision on the minutes, section 7-14-2603, MCA, and send notice of its decision "to all owners of land abutting on the road petitioned for." Section 7-14-2604, MCA. From the record on appeal, it does not appear that the board made the requisite formal decision to establish the road.

In November 1980, the board hired a surveyor to survey the road pursuant to section 7-14-2606, MCA. The road which was surveyed has been designated as Route A.

The board's next step in the statutory process is to determine damages sustained by the landowners. This procedure is set forth in section 7-14-2607, which states:

> "(1)    Whenever the board makes an order establishing or changing any road, it must find the amount of damages sustained by each owner or claimant of lands or improvements thereon affected by the road. Damages must be determined by estimating the benefits and damages accruing. The sum estimated as benefits must be deducted from the sum estimated as damages, and the remainder, if any, shall be the amount of damages awarded.
>
> "(2)    Damages shall be paid to the owner or claimant, if known, upon his showing or establishing his right or title to the lands or improvements and furnishing proper deeds and releases."

It is clear from the following testimony of Robert Storey that the County did not comply with the requirements of this statute:

> "Q. When the County first received the petition to establish that road, did the County, if I understand your testimony, the County has never determined damages or the benefit that would arise should the County establish a road along the proposed route (Route B) in regard to Mr. Brewton and Mr. Elford, have they? A. At this time, no."

8

The last statutory requirement with which the board must comply is set forth in section 7-14-2608, MCA, which states:

"Effect of acceptance or rejection of award of damages.

"(1)   If all awards are accepted, the board shall declare the road a county road and open it.

"(2)(a)   If any award of damages provided for in 7-14-2607 is not accepted within 20 days after the date of the award, it shall be deemed rejected by the owner.

"(b)   The Board shall by order direct that proceedings to procure the right-of-way be instituted under Title 70, Chapter 30 by the County Attorney against all non-accepting landowners.

"(c)   In such proceedings it shall be made to appear that the board shall have declared by resolution that the right-of-way was necessary and desirable."

The record reveals that although the Elfords and Brewtons were offered an award of damages for Route A, they were never offered an award of damages for the land sought to be condemned under Route B.  This route was never the subject of negotiations.  In fact, the Elfords and Brewtons were not aware that this route was being considered by the board until they received the letter from the county attorney on August 6, 1981.  Based upon this evidence, it is clear that the County's actions in establishing a road did not comply with section 7-14-2608, MCA.

Madison County argues that the above-mentioned "minor procedural defects" should be cured by section 7-14-2609, MCA, which states:

"Effect of failure to give notice.  The proceedings provided for in 7-14-2608 shall in no way be affected or invalidated by the failure of the board to give any notice or do any act provided for in this part.  Failure to give any such notice shall not be considered by any court as a defense in any proceedings for procuring right-of-way."

9

This statute, the County argues, demonstrates that substantial compliance with the statutory procedure for establishing roads is all that is required. The County's argument is well taken, and appears to be the intent of the legislature, which stated that the statutes were enacted "[T]o provide sufficiently broad authority to enable the highway officials at all levels of government to function adequately and efficiently in all areas of their respective responsibilities, subject to the limitations of the constitution and the legislative mandates hereinafter imposed." (Emphasis added.) Ch. 1, § 2(4) in Ch. 197, Laws of Montana (1965).

The legislature imposed upon counties the limitations set forth in sections 7-14-2601 to 7-14-2608, MCA. If counties were allowed to completely ignore the mandates of the statutes, they would be of no legal consequence. This could not have been the intent of the legislature.

Title 7, Ch. 14, MCA, generally requires the following chain of events: 1) a proper petition is filed with the County; 2) the County has the option of surveying the specific route; 3) the County determines the affected landowners and assesses their damages as provided for in section 7-14-2607; 4) the County offers an award of damages; 5) if the award is rejected by the landowners, the county attorney is directed to begin condemnation proceedings.

Here, Madison County did not receive a proper petition. An original survey was done by Madison County and an offer of damages was made to the landowners for land along Route A. Thereafter, instead of proceeding to condemnation on Route A, the County conducted a second survey for Route B, made no offer of compensation for land along Route B, and filed their

10

condemnation action. The County's proceedings did not in any manner substantially comply with the mandates of Chapter 7, Section 14, MCA.

Although the resolution of this issue disposes of the case, we will also briefly discuss the issues of whether Madison County complied with the statutory requirements of section 70-30-110, MCA, and whether the District Court's finding of a public prescriptive right-of-way was proper. We hope that the discussion of these issues will help to avoid a multiplicity of appeals.

Section 70-30-110, MCA, states that ". . . where land is required for public use,. . . it must be located in the manner which will be most compatible with the greatest public good and the least private injury . . ." Although a condemnor's decision as to choice of location is given great weight, State ex rel. Livingston v. District Court (1931), 90 Mont. 191, 300 P. 916, his decision can be overturned if clear and convincing proof is presented to show that the taking is excessive or arbitrary. State Highway Commission v. Crossen-Nissen Co. (1965), 145 Mont. 251, 400 P.2d 283.

In this instance, it appears that the County's choice of routes was arbitrary. The County did not properly evaluate and investigate the routes in accordance with the mandates of section 70-30-110, MCA. At the October 8 hearing, Robert Storey and Marie McAlear made statements that Route B would maximize the public good and minimize the private injury. However, the County later admitted that it did not investigate or evaluate the prospective injury to the Elfords' or Brewtons' property; nor did the County make any comparison of prospective injury between Route A and Route B. ". . . when the condemnor fails to consider the question of

11

least private injury between alternate routes equal in terms of public good, its action is arbitrary and amounts to an abuse of discretion." City of Helena v. De Wolf (1973), 162 Mont. 57, 68, 508 P.2d 122, 129, citing State Highway Commission v. Danielson (1965), 146 Mont. 539, 409 P.2d 443. Based upon the record, it is difficult to ascertain which route is superior in terms of public good. Lloyd Harkins, the county's road foreman, testified that the distances along Routes A and B were approximately the same. Nowhere in the record does the County provide a comparison of the costs of construction or the costs of acquiring the right-of-way between Routes A and B. Without more specific information, the District Court should not have found that Route B maximized the public good and caused the least private injury.

Finally, the Elfords and Brewtons argue that the District Court erred in finding that a public prescriptive easement exist across their respective properties. To establish the existence of a public or private easement by prescription, the party so claiming must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period. Taylor v. Petranek (1977), 173 Mont. 433, 568 P.2d 120. Evidence presented by the County showed that several of the Elfords' and Brewtons' neighbors used the road located on the Elfords' and Brewtons' land. The witnesses also testified, however, that the Elfords and Brewtons had given their consent to use the road, and that gates posted with "No Trespassing" signs crossed the road. This kind of use is not adverse and does not create a public prescriptive easement. Oates v. Knutson (1979), 182 Mont. 195, 595 P.2d 1181; Taylor

12

v. Petranek (1977), 173 Mont. 433, 568 P.2d 120; Ewan v. Stenberg (1975), 168 Mont. 63, 541 P.2d 60.

The judgment of the District Court is vacated and the cause is dismissed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices